WILLIAM HENRY JONES AND JOSEPH S. CUTTER *v.* THE CITY OF PETALUMA, LEE ELLSWORTH *et als.*, CONSTITUTING THE CORPORATE AUTHORITIES OF SAID CITY.

STATEMENT OF GROUNDS OF APPEAL.—A statement of the grounds of appeal is necessary when the appeal is taken upon grounds which appear upon the judgment roll.

IMMATERIAL AVERMENTS IN PLEADING.—Immaterial averments in a pleading need not be answered, and if it be done, both the complaint and answer, so far as they relate thereto, will be disregarded when the sufficiency of the pleadings and issues are brought in question.

SPECIFIC PERFORMANCE—DEMAND FOR DEED, HOW FAR MATERIAL.—In an action for the specific performance of a trust by the execution of a deed, a demand therefor before suit is only material as affecting costs. Without such demand the action may be maintained, but the plaintiff will not be entitled to costs.

PLEADING—SUFFICIENCY OF DENIAL.—An answer that denies a material averment of a complaint "upon information and belief" is a sufficient denial to raise an issue therson. *Vassault* v. *Austin*, 32 Cal. 597, and *Roussin* v. *Stewart*, 33 Cal. 208, affirmed.

CITIES AND TOWNS ON PUBLIC LANDS—CONSTRUCTION OF CONGRESSIONAL ACT RELATING THERETO, OF JULY 1ST, 1864.—The effect of the Act of Congress of July 1st, 1864, (U. S. Stats. 1863-4, p. 343,) in relation to the disposition of coal lands and of town property in the public domain, was to withdraw lands upon which cities and towns had been established before its passage, or might be thereafter established, from the operation of the general statutes in relation to the disposal of public lands, and to provide a new system for their disposal.

IDEM—EFFECT ON CITIES AND TOWNS.—The effect of said Act as to towns and cities which had been established, and those thereafter to be established, on public lands, was to secure to them the privileges which the former had usurped and the latter would need.

IDEM—EFFECT ON STREETS, ALLEYS, AND SQUARES IN CITIES AND TOWNS.—The effect of the Act in said cities and towns was to dedicate to public use so much of the public land as had been therein appropriated to streets, squares, and alleys, and to confer a license for a like appropriation in the future.

IDEM—CONSTRUCTION OF ACT OF CONGRESS OF MARCH 1ST, 1867, TO QUIET THE TITLE TO LAND IN THE TOWN OF PETALUMA, ETC.—The Town of Petaluma, which prior to the passage of said Act of Congress, was located on the public lands, had, by its proper municipal authorities, dedicated portions of the lands within its corporate limits to public use as streets, alleys, and squares; to which portions J. and C. had subsequently, and before March 1st, 1867, acquired an adverse possession, and thereafter claimed to be *bona fide* holders thereof: *Held*, that under said Act the town acquired the right to the use of such streets, alleys, and squares, and that to the lands so occupied, while this right thereto so remained, J. and C. could not acquire a *bona fide* occupancy within the meaning of the Act of Congress of March 1st, 1867, entitled "An Act to quiet title to land in the Towns of Santa Clara and Petaluma, in the State of California," and that the last named Act refers only to land embraced in lots, and not to land in use for streets, alleys, and squares.

FORMER JUDGMENT AS A PLEA IN BAR.—A former judgment rendered in an action tried upon its merits between the same parties and upon the same subject matter, is, if properly pleaded, an effectual bar to another action between the same parties on the same cause: but it constitutes no defense to a cause of action which accrued between the same parties and upon the same subject matter after the rendition of such judgment.

APPEAL from the District Court, Seventh Judicial District, Sonoma County.

The defendants appealed.

The other facts are stated in the opinion of the Court.

*F. D. Colton*, for Appellants.

*Wm. Henry Jones*, *in propria persona*, and for his co-respondent.

The points and authorities of counsel are stated and discussed in the opinion of the Court.

By the Court, SANDERSON, J.:

This appeal comes up on demurrer to the answer, which was sustained in the Court below, with leave to amend. The defendants elected to stand upon the answer without amendment, and final judgment accordingly passed for the plaintiffs.

In reply to the suggestion of the respondents that the appeal ought not to be entertained, because there is no statement of the grounds upon which the appellants rely for a reversal, it is sufficient to say that the grounds appear upon the judgment roll, and that where such is the case no statement is required. (*Hutton* v. *Reed*, 25 Cal. 478; *Solomon* v. *Reese*, 24 Cal. 28.)

The action was brought to compel the corporate authorities of the City of Petaluma to execute an alleged trust in favor of the plaintiffs, created by the Act of Congress of the 1st of March, 1867, whereby the United States granted to the city its title to the land within the corporate limits of the city in trust for the persons who were in the *bona fide* occupancy thereof on the day on which the Act was passed, with authority to convey the same to such persons. The answer purports to contain three separate defenses, and the question is, whether either of them states facts sufficient to constitute a defense to the action. Preliminary to that question, however, is the question as to what are the material allegations of the complaint.

The complaint contains twelve printed pages, whereas two are amply sufficient to contain all the allegations which are material to the plaintiffs' cause of action. It contains an elaborate history of the lot in question from 1854 down to the present time. The name of the first and each subsequent

occupant is given, with a minute detail of the acts of each in relation thereto, even to the payment of taxes thereon. An elaborate history of the City of Petaluma and its corporate authorities, with an account in detail of their transactions in relation to the lot, is also given. It is hardly necessary to say that all such matters were improperly inserted in the complaint. They are merely evidence, and should have been stricken out, and doutless would have been had the defendant made a motion to that effect. Such matters constitute immaterial averments, and the defendants need not answer them, and if they do, both the complaint and answer, so far as they relate thereto, must be disregarded when the sufficiency of the pleadings and issues are brought in question. (*Green* v. *Palmer*, 15 Cal. 411; *Coryell* v. *Cain*, 16 Cal. 567; *Wilson* v. *Cleaveland*, 30 Cal. 192; *Larco* v. *Cassanueva*, 30 Cal. 561; *Racouillat* v. *Rene*, 32 Cal. 450.)

The only material allegations in the complaint are: First— That on the first day of March, 1867, the plaintiffs were in the *bona fide* occupation of the land in question; Second— That on that day the land constituted and was a part of the public land of the United States, and not included in any reservation of the United States; Third—That it was on that day situated within the corporate limits of the City of Petaluma; Fourth—That it was on that day granted by the United States to the City of Petaluma to hold in trust for the plaintiffs, and to convey to them upon request; Fifth—That the city accepted the trust; Sixth—That subsequently thereto, and prior to the commencement of the action, the plaintiffs demanded of the city a conveyance of the land, pursuant to said trust;—but this allegation is material only upon the question of costs, (*Gray* v. *Dougherty*, 25 Cal. 266;) Seventh— That the city then and there refused to comply with said demand. All of which could have been stated in the complaint with much the same brevity with which it is stated in this opinion.

The first defense contained in the answer consists of

30

denials. The defendants followed the example of the plaintiffs, and at least attempted to deny some of the probative facts contained in the complaint. All such denials, however, must be discarded, for all the purposes of the present question, as already suggested. When thus weeded, does the answer deny any of the material allegations above stated? If so, assuming that the sufficiency of denials may be tested by demurrer, the demurrer to the first defense ought not to have been sustained.

The answer contains the following language: "And said defendants deny, *upon information and belief*, that said plaintiffs, or either of them, were, on the first day of March, 1867, or at any other time, the *bona fide* occupants of said land, or any part thereof, and allege that on or about the month of December, 1865, said land and every part thereof became, and ever since has been, and still is, a public square of said City of Petaluma." This denial must be held good upon the authority of *Vassault* v. *Austin*, 32 Cal. 597, and *Roussin* v. *Stewart*, 33 Cal. 208.)

The second and third defenses relate mainly to the same state of facts, and the discussion of them will be materially shortened by inverting the order in which they are stated in the answer.

The third defense is founded upon the Act of Congress of the 1st of July, 1864, in relation to the disposal of coal lands and of town property in the public domain, passed at the first session of the Thirty-eighth Congress, (Statutes at Large, 1863–4, p. 343,) and the Act of the 3d of March, 1865, supplemental thereto, passed at the second session of the Thirty-eighth Congress, (Statutes at Large, 1864–5, p. 529.) The second section of the former Act provides:

"That in any case in which parties have already founded, or may hereafter desire to found, a city or town on the public lands, it shall and may be lawful for them to cause to be filed with the Recorder for the county in which the same is situated a plat thereof, for not exceeding six hundred and forty

acres, describing its exterior boundaries according to the lines of the public surveys, where such surveys have been executed; also giving the name of such city or town, and exhibiting the streets, squares, blocks, lots, and alleys, the size of the same, with measurement and area of each municipal subdivision, the lots in which shall each not exceed four thousand two hundred square feet, with a statement of the extent and general character of the improvements; the said map and statement to be verified under oath by the party acting for and in behalf of the persons proposing to establish such city or town; and within one month after such filing there shall be transmitted to the General Land Office a verified transcript of such map and statement, accompanied by the testimony of two witnesses that such city or town has been established in good faith, and when the premises are within the limits of an organized land district, a similar map and statement shall be filed with the Register and Receiver; and at any time after filing such map, statement, and testimony in the General Land Office, it shall and may be lawful for the President to cause the lots embraced within the limits of such city or town to be offered at public sale to the highest bidder, subject to a minimum of ten dollars for each lot; and such lots as may not be disposed of at public sale shall thereafter be liable to private entry at said minimum, or at such reasonable increase or diminution thereafter as the Secretary of the Interior may order from time to time, after at least three months' notice, in view of the increase or decrease in the value of the municipal property, provided that any actual settler upon any one lot, as aforesaid, and upon any additional lot in which he may have substantial improvements, shall be entitled to prove up and purchase the same as a pre-emption, at said minimum, at any time before the day fixed for the public sale."

The Act of the 3d of March, 1865, is merely an enlargement of some of the privileges conferred by the Act of July

1st, 1864, and has no special bearing upon the question before us.

The answer alleges in substance that on the 1st of July, 1864, at the date of the first of the aforesaid Acts of Congress, there was situated within the corporate limits of the City of Petaluma about a thousand acres of land, of which the land in controversy is a part, which was then unsurveyed public land of the United States. That at that date there were residing upon said land about two thousand persons, who, with others interested therein, desired to found a town or city thereon under the aforesaid laws of the United States. That afterwards, to wit: in December, 1865, they proceeded to found a city by taking the steps prescribed by the aforesaid Acts of Congress. The answer then details the various steps which were taken to that end, and need not be repeated here. We have compared them with the provisions of the Act of the 1st of July, 1864, and have been unable to find wherein they failed to comply with any of the conditions of the statute. It is then alleged that by the survey and plan made in pursuance of the statute, the land in controversy was laid off and marked as a public square, and was, on the 1st day of March, 1867, and for more than six months prior thereto, a public square or plaza of the City of Petaluma.

The first point made against this defense by counsel for the respondents is, that the city could acquire no privileges under the Acts of Congress, because the pre-emption rights are given to natural persons, and not to corporations. If we comprehend this objection, we are unable to perceive its force. We do not understand this to be a contest between rival pre-emptioners, or that the general statutes upon the subject of pre-emptions has any application to this case.

The effect of the Act of the 1st of July, 1864, was to withdraw lands upon which cities and towns had been established before its passage, or might be established thereafter, from the operation of the general statutes in relation to the disposal of the public lands, and to provide a different system in some respects for their disposal. The former system was

inapplicable to such cases, and would have worked much mischief. Accordingly some plan was needed by which towns and cities already established could be secured in the privileges which the former had usurped and the latter would need.

The Act of the 1st of July, 1864, was the result. Its result was to confirm the usurpations of the past, and to provide a lawful mode for the acquisition of such privileges in the future. Its effect was to ratify and confirm the use to which the land had been put by cities and towns for the purposes of streets, squares, and alleys, and to permit such use in the future, by providing for the sale of *lots* only. It was a dedication to public use of so much of the public land as had theretofore been appropriated to streets, squares, and alleys; and a license for like appropriations in future. Such being the object and effect of the statute, if the land in question was public land, (and by public land we mean land to which no private right had attached at the time the steps in question were taken,) we are unable to perceive why the City of Petaluma did not acquire a right to it as a public square. And if so, the plaintiffs could not thereafter, while it so remained, acquire a *bona fide* occupancy within the meaning of the Act of 1867, which obviously refers only to land in lots, and not to land in streets, squares, and alleys.

The second defense is a former judgment of the District Court of the Fifteenth Judicial District, rendered on the 17th of November, 1866, in an action between the plaintiffs and the city, which was commenced in October, 1865, in the District Court of the Seventh Judicial District, it being alleged that the issues therein were the same as in the present case, and that the judgment was adverse to the plaintiffs. This defense is pleaded in the usual form, but, in connection therewith, the entire judgment roll, consisting of the complaint, answer, an agreed case upon which the controversy between them was submitted, and the final judgment, is set out in *hæc verba*. On comparison, we find that the controversy in both actions is between the same parties, and in

relation to the same land; that the first action was brought to quiet the title; that the title set out by the plaintiffs in the first action is precisely the same as that set out in the present action, except so far as it may have been affected by the Act of the 1st of March, 1867. That the acts of the city, of which the plaintiffs complained in the first action, were the steps taken by her under the Act of the 1st of July, 1864, which we have just considered, it being alleged that they clouded and disturbed the plaintiffs' title. That for a defense the city relied exclusively upon the validity of those steps. So the only question was, whether by virtue of the steps taken by the city, the land in question had become a public square, or was, notwithstanding such steps, the private property of the plaintiffs as against the city. Upon that question the judgment was against the plaintiffs, and by it they are concluded, unless they now have legal rights which were then non-existent. If, thereafter, the land in any way ceased to be a public square, and the plaintiffs became and were on the 1st of March, 1867, the *bona fide* occupants thereof, they are entitled to show it; for, if on that day it had become the private property of the plaintiffs as against all the world, except the United States, the city took the legal title in trust for them. If, on the contrary, the land, as alleged by the defendants, continued to be a public square from the date of the first judgment down to and including the 1st of March, 1867, the plaintiffs were not and could not have been the *bona fide* occupants thereof on the last named day, within the meaning of the Act of Congress of that date; and the title to the land, by that Act, passed to the city for the purpose of a public square—or, at least, it did not pass in trust for the plaintiffs.

Whether the plaintiffs, prior to the first judgment, had an interest in the land which could not be legally divested by operation of the Act of 1864, it is idle to inquire. If they had, the city could not have converted the land into a public square except by proceeding to condemn it to public use. The first judgment, so far as appears, has never been set

aside or reversed on appeal, and is, therefore, an answer to that question so far as the plaintiffs are concerned.

As to each defense, the demurrer should have been over-ruled. The judgment is, therefore reversed and the case remanded for further proceedings. It is further ordered that the remittitur be issued forthwith.