Points decided.

[No. 2,299.]

# A. W. THOMPSON v. ANGUS McKAY AND GEORGE PEARCE.

CONSTRUCTION OF CONTRACTS.—In construing a doubtful contract, the Court will ascertain the relation of the contracting parties to each other, and to the subject matter of the contract, and if possible, so construe the instrument, however inartificially drawn, as to give effect to the intention of the parties, if it can be done without disregarding the language of the instrument.

CONSTRUCTION OF A DOUBTFUL CONTRACT.—G. owned a lot twenty feet front, and made a verbal agreement with M. that the latter should buy an adjoining strip five feet wide, and the two should erect a two-story brick building on the twenty-five feet, and G. should own the first story and M. the second. The building was erected, and G., by his tenant, entered into possession of the first story, and M., by his tenant, into possession of the second. Afterwards, G. executed to M. a writing, in which he gave up to M. "all right and title" to "the second story of the store, part of five feet for an entrance for the use of a passage up stairs, and as they are now in use and occupied," etc. *Held*, that the instrument was not void for uncertainty, and that it conveyed to M. all the title of G., legal or equitable.

JUDGMENT IN EJECTMENT AN ESTOPPEL.—When ejectment is brought to recover two parcels of realty, and the defendant denies the plaintiff's title, and on the trial the plaintiff puts in evidence in support of his title to both parcels, and the plaintiff recovers one parcel only, the plaintiff is estopped by the judgment from again litigating the title to the parcel he failed to recover, even if the judgment is silent as to the latter parcel.

SALE BY TRUSTEE.—A conveyance to one in trust, to rent or sell the property and apply the proceeds towards the payment of a debt of the grantor, conveys the fee, and the trustee has power to convey the legal title.

OBJECTION TO TESTIMONY.—If the plaintiff offers competent testimony to prove certain facts, and it is rejected by the Court on the objection of the defendant, the defendant will not afterwards be permitted to allege that the plaintiff failed to prove the facts embraced in the offer.

PURCHASER AT TRUSTEE SALE.—When property is conveyed to a trustee to rent and sell, and apply the proceeds to the payment of a debt of the grantor, a bona fide purchaser at the trust sale acquires a good title, even if the trustee, before the sale, had received sufficient money from the rents to pay the trust debt.

TITLE ACQUIRED PENDENTE LITE.—A defendant in ejectment cannot, on the trial, avail himself of a title acquired *pendente lite*, unless it is set up by supplemental answer.

APPEAL from the District Court of the Fifteenth Judicial District, City and County of San Francisco.

This was an action of ejectment. The complaint contained two counts, one for the rooms of the second and third stories of the northerly section of the brick building mentioned in the opinion, fronting twenty feet on the street, and the other for the land on which said section of the brick building was erected.

The action was commenced January 10th, 1867.

On the 5th day of August, 1856, Alexander McKay conveyed to Angus McKay all his interest in the land and building mentioned in the opinion. In September, 1862, Angus McKay commenced an action of ejectment against the Petaluma Lodge and others to recover the two upper stories of the building and the strip of land five feet wide bought by Alexander McKay, and the stairway five feet in width. The defendants answered that Gowen owned the property, and that they had leased of him, and denied the plaintiff's title. The Court found that the plaintiff owned the strip of land five feet wide, and gave him judgment for that only. The judgment was silent as to the other premises described in the complaint. The plaintiff, in August, 1866, by means of a writ of restitution issued on his judgment, obtained possession of all the premises described in his complaint.

On the 25th day of February, 1862, Gowen executed and delivered to William Hill a trust deed of the five feet, and also the twenty feet, being the ground on which the building was erected. This deed, after the granting clause; which was a remise, release, and quitclaim, reads as follows: "To rent or sell the before described property altogether, or in such separate lots or parcels, and at such time or times, and at either public or private sale or sales, as he in his own judgment may deem most expedient, and to apply the proceeds thereof (after deducting therefrom a reasonable charge for his services, as well as the necessary expenses incurred in renting or making sale of said property) towards the pay-

ment of a certain note of hand, made and executed by the said party of the first part, in favor of the said William Hill, party of the second part, or order, for the sum of seven hundred dollars, being dated at San Francisco, April 10th, 1861, and on which note there remains due and unpaid at this present date, the sum of seven hundred and fifty-one dollars and forty-eight cents, or thereabouts, as reference being thereunto had will more fully appear, and after said note is fully paid, as well as the expenses above referred to, the surplus, if any there be, is to be paid on demand to the said party of the second part, his heirs or assigns.''

In August, 1856, the building erected by Alexander McKay and Gowen fell down, partially by reason of excavations made at the foundation. It was rebuilt in the Spring of 1857, with a third story, and Gowen then took possession of the whole building. This possession he and his grantees retained until ousted from the passage way, the five feet, and the upper stories, in 1866. Gowen died intestate March 14th, 1863, leaving a daughter, his sole heir; and on the 19th of August, 1867, the heir conveyed to Angus McKay one undivided one half of the same premises conveyed in trust to Hill. On the 25th day of April, 1865, Hill, the trustee, conveyed to Harrison Meacham the upper stories of the building, and the right of way over the stairway to the rooms in the second and third stories; and on the 27th of October, 1866, Meacham conveyed the same premises to J. B. Southard, W. H. Patterson, and the plaintiff, Thompson. The plaintiff claimed title under this deed, made by Hill. The answer set up that the trust debt had been paid to Hill before he made the sale, and that the plaintiff, and those through whom he claimed title, knew of this before they purchased. The plaintiff recovered judgment for the possession of the rooms of the second and third stories of the twenty feet of the building, being its northerly section. The defendants appealed.

The other facts are stated in the opinion.

*George Pearce*, for Appellants.

Appellant McKay had good title to the premises under the instrument executed by Gowen. (*Mulford* v. *LeFrank*, 26 Cal. 88; 4 Kent Com. 508; 1 Bouv. Inst. 343.) The respondent contends that appellants are estopped by the judgment of *McKay* v. *Petaluma Lodge*. We say this is error, mainly on two grounds:

1. The doctrine of *Caperton* v. *Smith*, 26 Cal. 479, had not been promulgated at the time *McKay* v. *Petaluma Lodge* was tried in the Court below; and McKay had a right to accept the judgment as it was, inasmuch as it gave him complete control of and dominion over the premises, and as the answer in that case did not ask that Gowen might be adjudged the owner, nor did the Court so determine. The doctrine of *Caperton* v. *Smith* has not been carried to the extent that a judgment in ejectment will divest a title to land, when there was no judgment to that effect in favor of an adversary. In *McKay* v. *Petaluma Lodge* there was no judgment in favor of Gowen, or those holding under him, for anything, nor was any asked by the defendants. The Court gave McKay judgment, but not for as much as was demanded in the complaint.

2. The respondent contended in the Court below that they had a trust deed. We contend they had only a mortgage. (*Kidd* v. *Teeple*, 22 Cal. 255; 2 Wash. on Real Property, 81; *Marion* v. *Titsworth*, 10 Wis. 320.) And that it gave no right of possession. (Prac. Act, Sec. 260; *McMillan* v. *Richards*, 9 Cal. 365; *Fogarty* v. *Sawyer*, 17 Cal. 589; *Bludworth* v. *Lake*, 33 Cal. 255.) And we contend that it was a mortgage of the accruing rents only. If the mortgage debt was paid before the conveyance to Meacham, April 25th, 1865, then the power to sell was extinguished. (1 Wash. on Real Property, 530; Marginal, 502, 503; *Chartar* v. *Stevens*, 3

Denio, 33; *Ormsby* v. *Tarascon*, 3 Litt. 404; *Ivy* v. *Gilbert*, 2 P. Wm. 13; *Mills* v. *Banks*, 3 P. Wm. 1; *Roarty* v. *Mitchell*, 7 Gray, 243; 5 Hill, 272.)

*W. H. Patterson*, for Respondent.

Appellants claim that, inasmuch as there was upon the former trial no finding or decree directly alleging that Gowen had the better title, the rule in *Caperton* v. *Smith* did not apply. The answer to this proposition is, that in ejectment, as in other actions, the judgment, where plaintiff fails, is simply for defendant, or that plaintiff have and recover nothing by his action; but as to the whole matter put in issue the judgment is a bar. (*Caperton* v. *Smith*, 26 Cal. 479; *Clark* v. *Boyreau*, 14 Cal. 434; *Flaundreau* v. *Downey*, 23 Cal. 354; *Marshall* v. *Shafter*, 32 Cal. 176; *Jones* v. *City of Petaluma*, 36 Cal. 230.) Defendant, if plaintiff succeeds, is estopped from questioning the title of plaintiff as it was when litigated; and the same rule must apply from plaintiff to defendant, especially when, as here, both parties deraign title from the same source. Where two parcels of land are sued for, and a recovery had for one, but not for the other, it is manifest that the failure to recover for the second lot, where, as here, the title thereto was at issue and tried, would have the same effect as though the action therefor had not been attached to an action for the other lot held under a different title.

Appellants claim that Gowen was the owner of the premises, and conveyed the same to Hill, in trust, however, for securing to him a means of collecting the amount of certain indebtedness; that the object of the trust had been accomplished before the deed (Hill to Meacham) under which plaintiff holds was made; that Gowen, had he been living, would have had, and that, as he is dead, his heirs have, therefore,

such an equitable estate as would control the legal title; and that, by deed from Gowen's heirs, the defendants have acquired this equitable estate.

First—This equitable title, if at all, was acquired *pendente lite,* and is not pleaded. (*Reilly* v. *Lancaster,* April Term, Case No. 2,015; *McMinn* v. *O'Conner,* 27 Cal. 238; *Moss* v. *Shear,* 30 Cal. 472.)

Second—The deed (Gowen to Hill) conveys the legal title in trust for the express purpose that the trustee should sell the property, at such time and manner as he may deem expedient.

We offered to show that Hill used the rents in paying off incumbrances; we offered to show how much was paid, etc.; but defendants objected, the Court sustained their objection, and they cannot now complain of our not doing so. These liens and incumbrances, as they controlled the possession and had to be provided for, were necessarily to be paid off before the object of the trust deed could be reached. In determining the relation of the parties, the Court would have allowed to Hill these advances, with interest, before entering upon a computation of the amount applicable as payment upon his note. (*Morrison* v. *Bowman,* 29 Cal. 337–353.) The power to Hill was of such a character, coupled with such an interest, as to be irrevocable, and not affected by the death of the donor. (*Barr* v. *Shroeder,* 32 Cal. 610; *Travers* v. *Gray,* 15 Cal. 12.)

By the Court, Crockett, J.:

The first point of inquiry is, whether the instrument from Gowen to Alexander McKay, of April 26th, 1856, was operative as a deed to convey the legal title of Gowen to the demanded premises; for if it had that effect it is evident the defendants are estopped by the judgment in the case of *McKay* v. *Petaluma Lodge and others,* from again litigating

the same title in this action. It is not pretended that the defendants have acquired any new title or right to the possession derived from or under Gowen since the commencement of that action, except the conveyance from his daughter, made after his death, during the pendency of the present action, and which will be hereafter noticed. But if McKay acquired the legal title of Gowen by means of the instrument of April 26th, 1856, that title was distinctly put in issue and tried in the action against Petaluma Lodge and others, and was decided against McKay. The judgment, it is true, does not, on its face, expressly and in terms, adjudicate the title in respect to the premises now in controversy. But the title to the premises was distinctly in issue, and McKay put in evidence oral and documentary proofs in support of his alleged title under Gowen. The judgment awarded to him the adjoining strip of land, five feet in width (which was also in contest in the action), but is wholly silent as to the premises now in controversy. The omission of the Court to award to him any relief in respect to these premises is, in its legal effect, an adjudication that he was not entitled to relief in that action. (*Marshall* v. *Shafter*, 32 Cal. 176; *Jones* v. *Petaluma*, 36 Cal. 230.) His title under Gowen was put in evidence, and the Court must have decided it to be insufficient to entitle him to a judgment for the possession, as against Gowen's tenants. If the Court had decided otherwise it would have awarded to him the proper relief. But the plaintiff in ejectment must recover, if at all, on the legal title or right to the possession, and not on a mere equity; and a fruitless attempt to maintain ejectment on an equitable title would not debar him from asserting his equity in another and appropriate action in the proper forum. But if McKay, by means of the instrument referred to, had acquired Gowen's legal title before the commencement of that action, and put it in issue by the pleadings, and adduced evidence in support of it, he is obviously concluded by the

judgment, and cannot again litigate the same title in the present action. It therefore becomes material to determine the character and legal effect of that instrument. The rule is well established that, in construing doubtful instruments, they must be interpreted in the light of the surrounding circumstances. After ascertaining the relation of the contracting parties to each other, and the subject matter of the contract, the Court will, if possible, so construe the instrument, however inartificially drawn, as to give effect to the intention of the parties, provided it can be done without disregarding the language of the instrument, when all its parts are considered. The proofs make it clear that in 1855 Gowen claimed to be the owner of a lot having a frontage of twenty feet, on which he desired to erect a building one story high, and applied to Alexander McKay for that purpose; that McKay ascertained that the Masons in that vicinity desired to procure a large hall for their use, but a room over Gowen's lot would be too small for the purpose; and thereupon it was verbally agreed between Gowen and McKay that the latter should obtain the title to an additional strip of land five feet wide, and that there should be erected a house two stories high, covering the front of Gowen's lot, together with the strip of five feet, Gowen to furnish the material for the building, and McKay to do the work; and when completed Gowen was to own the first story and McKay the second; that the building was accordingly erected, and the outer wall occupied a portion of the five feet, and the stairway the remainder of it, together with a small strip from Gowen's lot; that when the building was complete Gowen leased the first story to a tenant, who entered into possession, and McKay leased the second story, by a written lease, for a term of three years, to the Masons, who entered and occupied under the lease. Whilst affairs were in this condition, in April, 1856, and when on the eve

of a visit to the Eastern States, Gowen made and delivered
to McKay an instrument in these words:

"Article of agreement made and entered this 26th day of
April, A. D. 1856, between Heber Gowen of the first party,
and Alexander McKay of the second party, witnessed that
said party of the first party, for and in consideration of the
premises, and hereby covenants and agrees to give up all
right and title to the party of the second party since all his
assigns forever hereafter, all the following described proper-
ty hereafter mentioned on Main street, Petaluma, California:
The second story of the store part of five feet for an entrance
for the use of a passage up stairs, and as they are now in
use and occupied for the Odd Fellows and Masons.

"Hereunto the above agreement set my hand and seal this
26th day of April, in the year 1856.

[SEAL.]        (Signed,)            "HEBER GOWEN."

Notwithstanding the very awkward, inaccurate, and obscure
language of this instrument, I think it is capable of interpre-
tation, when considered in the light of the surrounding facts.
McKay owned the strip five feet wide; but the outer wall
occupied about two feet of this space, and the stairway cov-
ered not only the remainder, but also a small portion of
Gowen's lot. McKay, by his tenants, the Masons, was in
the possession of the second story, in accordance with the
parol agreement, and Gowen obviously intended by this
instrument, made on the eve of his departure on a long
journey, to define McKay's rights in the property. Hence
he covenants and agrees to "give up" to him "all right and
title" (to) "all the following described property hereinafter
mentioned, on Main street, Petaluma, California: The sec-
ond story of the store and part of five feet of ground for an
entrance for use of a passage up stairs, and as they are now
in use and occupied for the Odd Fellows and Masons." By
interpolating the word "and" between the words "store"

and "part," in the last sentence, and correcting the punctuation, the meaning becomes obvious. The property intended to be conveyed was the second story, occupied by the Odd Fellows and Masons, above the store, together with a right of way over so much of Gowen's lot as was occupied by the stairway.

I am, therefore, of opinion that the instrument was not void for uncertainty, and that it was operative to convey, and did convey, to McKay all the title of Gowen, legal or equitable, in and to the second story and the stairway. From this view of the legal effect of the instrument, it results that McKay had the legal title of Gowen at the commencement of the action against Petaluma Lodge and others, and is, therefore, estopped by the judgment in that action from again litigating the title in the present action.

But the defendants claim that the deed from Gowen to Hill, under which the plaintiff deraigns title, was a conveyance in trust, with a power of sale, for the purpose of satisfying the trust debt, but for no other purpose; and that the proofs show the trust debt was paid before the conveyance from Hill to Meachem, and this conveyance is void for want of authority in Hill to make it. That the deed from Gowen to Hill conveys the fee, and that Hill had the power, in execution of the trust, to transmit the legal title to a purchaser, is too plain for debate.

As this record presents the facts, there is nothing to show that the conveyance to Meachem was not made in execution of the trust, and for payment of the trust debt. It appears on the face of the deed to Hill that the property was already incumbered, and the plaintiff offered to prove that he had been compelled to disburse large sums to remove prior incumbrances, and to preserve the trust fund for the security and satisfaction of the trust. On the objection of the defendants this proof was excluded by the Court, and it is not for them to complain that the plaintiff has failed to show how

he applied the rents and proceeds of sales. If they were applied for the extinguishment of prior incumbrances, and to preserve the trust fund, I think the trustee did not thereby exceed his powers; but it is unnecessary to express any decided opinion on that point. Under such a trust as this, it was not incumbent on the purchaser to institute an examination into the accounts of the trustee, on pain of losing the property, if it should ultimately appear, on a final settlement of the trust, that the trust debt had in fact been satisfied out of the rents before the sale. If the purchaser incurred this peril, there would be but few sales under such deeds. The rule that a purchaser at a trust sale is bound, in certain cases, to see to the application of the proceeds of the sale, does not apply to a case like this; and if it did, it would concern only the *cestui que trust* and the purchaser.

The only remaining point is as to the effect of the conveyance from the heir at law of Gowen to the defendants *pendente lite*. It is sufficient, on this point, to say that it has been frequently decided by this Court that a defendant cannot avail himself of a title acquired during the pendency of the action, unless it is set up in a supplemental answer. If acquired after the original answer was filed, he should set it up in an amended answer, on leave of the Court. Otherwise it will not avail the defendant on the trial.

Judgment affirmed.

Neither Mr. Justice WALLACE nor Mr. Justice TEMPLE expressed an opinion.