Dickman, J.
This proceeding is prosecuted on the relation of W. H. Kinder, superintendent of insurance of the state of Ohio, against The Eagle Insurance Company of Cincinnati, and John K. Green and Samuel P. Post, president *266 and secretary of the company. It is alleged in the petition, that the company is a fire insurance company incorporated under an act passed March 22,11850 (48 Ohio Taws, 498), and that it was and is the duty of the company and its president and secretary, to deposit in the office of the superintendent of insurance a statement of the condition of such company on the thirty-first day of December, 1892, as required by sections 3654 and 3655 of the Revised Statutes of Ohio; that proper blanks were furnished and due demand made, but that the company and its officers have refused and do refuse to file the required statement; and that the company still continues to carry on the business of insurance. The prayer of the petition is, that writs of mandamus may be issued, compelling the company, .its president and secretary, to comply with the provisions of the above mentioned sections of the Revised Statutes.
The defendants answer, and set up two defenses. First, they aver that under the provisions of the act of March 22, 1850, which constitutes the charter of the insurance company, no power was reserved to alter, amend or repeal the charter; and that if sections 3654 and 3655 impose any duty upon the defendants or either of them, they would impair the obligation of the contract embraced in the charter of the company, and would be in violation, of section 28, of article 2, of the constitution of Ohio, and of section 10, of article 1, of the constitution of the United States.
The second defense contained in the answer is that of res judicata. It is averred by the defendants, that on or about July 27, 1886, the attorney general filed a petition in the court of common pleas of Franklin county, Ohio, in which the state of Ohio was plaintiff and The Eagle Insurance Company of Cincinnati was defendant, setting forth that the company and its officers, after due notice and request, had failed, neglected and refused to deposit, either on the first day of January, 1886, or within thirty days thereafter, the statement required by section- 3654, of the Revised Statutes, showing the condition of the company on the thirty-first day December, 1885, and praying judgment against the company for the five hundred dollars penalty *267 and the “additional” thereto, as imposed by section 3655, of the Revised Statutes; that the insurance company in August, 1886, filed its answer, setting up that it was organized and existed as a corporation solely under and by virtue of the act of March 22, 1850, and was not subject to the provisions of sections 3654 and 3655, of the Revised Statutes; that in December, 1886, the state demurred to the company’s answer, and on February 1, 1887, the demurrer being overruled, and the state not desiring to plead further, the action was dismissed by the court, and judgment rendered in favor of the company; that the state took the case by petition in error to the circuit court, and by that court the judgment of the court of common pleas was affirmed, and remains in full force.
To the answer in this proceeding, and to each of the defenses therein contained, the plaintiff demurs.
The Eagle Insurance Company is a corporation, created before the adoption of the present constitution, claiming to exercise certain rights, privileges and franchises, under a special act of the legislature which constitutes its charter. Obviously, such charter or act of the legislature, in connection with its acceptance, may be regarded as a contract, and one which, so long as the body corporate faithfully observes it, the legislature is constitutionally restrained from impairing, by annexing without the consent of the corporation new terms and conditions, onerous in their operation, or inconsistent with a reasonable construction of the contract. And any act of the legislature which violates any corporate right, secured by such charter of the corporation, without its consent, is void as against the constitution of the state and the United States.
But, in determining the corporate rights secured by the charter, the true rule of construction is, that corporations take nothing by intendment but what is necessary to the enjoyment of that which is expressly granted. When a company is incorporated it is to be inferred, that the legislature intended it should exercise only those corporate powers that might be necessary to carry on the business for which the company was organized. And it may be stated *268 as a rule of construction, that where there is a grant of special privileges in derogation of common right, or an exemption from the operation of general laws governing other persons or corporate bodies, it must always be presumed that the legislature does not design to confer franchises of this character, unless a contrary intention be expressed in unambiguous terms. Mor. Corp., §323.
Though there may be no reservation in the charter of incorporation that the state shall have the right to repeal, alter, or amend it at pleasure, the grant of corporate powers, or of exemptions from the operation of general laws, will carry only those that are expressly or unambiguously granted. “The rights of the public are never presumed to be surrendered to a corporation, unless the intention to surrender clearly appears in the law.” Perrine v. Chesapeake mid Delaware Canal Co., 9 How. (U. S.) 192. “A franchise must be created by express terms and cannot be inferred from the mere silence of the charter.” Zanesville v. Gas Light Co., 47 Ohio St. 31. As expressed by Chief Justice Marsharr in the Dartmouth College case, “A corporation possesses only those properties which the charter of its creation confers upon it, either expressly, or ‘as incidental to its very existence.”
When it is sought, therefore, to subject a company, claiming rights under a special charter, to the provisions of a general law, the question at once arises, are the requirements of the law plainly inconsistent with the enjoyment of the charter rights and franchises granted to the company. If the provisions of the general law are consistent with the rights of the corporation as secured by its charter, the corporation will be subject to the law-making power to the same extent as unincorporated individuals. It need hardly be stated, that when the legislature, by a special act or charter, clothes individuals with corporate power, they are not to be presumed as forever thereafter emancipated from all legislative control as to their corporate acts and franchises. A contract of exemption from such further legislation can never be implied.
*269 An association deriving its corporate existence from the state, and engaged in a business of such a character that the public are directly interested in its proper management, should be subject to such reasonable regulations as will secure the ends of its creation. Not only the state may, but it is an obligation binding upon it, for the protection of its citizens, to see that such laws are passed and enforced, as will enable the state to know whether corporations are properly exercising their corporate privileges. It has accordingly been enacted by the general assembty (Revised Statutes of Ohio, sec. 272), that when the superintendent of insurance has reason to suspect, that the affairs of an insurance company doing business in the state are in an unsound condition, he shall make, or cause to be made, by some person b3r him for that purpose appointed, an examination into the affairs of such company; and such company, its officers and agents, shall submit their books and business to such examination, and in every way facilitate the same. From this salutary provision of the statute, no insurance company should be exempted, whether created before or since the adoption of the present constitution. Nor should it, in our judgment, be deemed an unwarranted exercise of the legislative power, if, instead of authorizing the superintendent of insurance to make an examination into the affairs of such company, the law should require the officers of such company to deposit with the superintendent a statement of the condition of the company at any designated time.
Section 3654 of the Revised Statutes, provides that, the president or vice-president and secretary of each insurance company organized under any law of this state shall annually, on the first day of January, or within thirty da3rs thereafter, prepare, under oath, and deposit in the office of the 'superintendent of insurance, a statement of the condition of such company on the thirty-first day of December then next preceding, exhibiting in form, and with specifications in •detail, as prescribed by the statute: (1). The amount of the capital stock of the compa^r; (2) The property or assets ield by the company; (3) The liabilities of the company; (4) *270 The income of the company during the preceding year; and (5) The expenditure during the preceding year.
The main proposition of counsel for The Eagle Iusurance Company is, that the obligation of the contract which the company had with the state, in its charter, will be impaired if that company be held subject to the operation of sections 3654 and 3655. Upon- an examination of the company’s charter, we discover no repugnance between the requirements of those sections of the statute and the provisions of the charter. The charter does not, either in express terms or by implication, absolve the company from the duty of preparing and depositing the required statement of its condition; and it contains no language which, even by a strained construction or remote inference, would exempt the company from a compliance with the provisions of those sections.
Those provisions we regard as no more than reasonable regulations for the safety of the capital, interest of the stockholders, and security of the public, entirely consistent with the corporate rights granted to the insurance company in its charter, and especially proper as a safe-guard for policy holders, entitled to know whether the affairs of the company are in a sound or unsound condition. The fact that The Eagle Insurance Company may be a corporation conducting its business upon a sound basis, does not release it from the operation of those reasonable regulations that may be prescribed by the legislature to promote the purposes of its. creation, and which are not repugnant to its charter.
The regulation that the defendant and other insurance companies shall file the statement of their condition as required by statute, being such as we deem the public good requires, the reasonableness of such regulation'may be illustrated by a reference to what the defendant company may be capable of under its charter, relative to the object of its incorporation. It cannot be said, that the legislature has been shorn of all power by general law, to see that the defendant keeps within the line of its charter, and performs, its corporate duties.
The charter fixes the capital stock of the association at one hundred thousand dollars, which may be increased to- *271 two huudred thousand dollars at the pleasure of a majority ■of the stockholders, to be divided into shares of one hundred dollars each. At the time of subscription, twenty - five dollars must be paid oh each share, and tiie balance on ■each share is made subject to the call óf the directors, and is to be secured by endorsed notes payable on demand, or ■other property. When four hundred shares are subscribed for and paid, or secured to be paid, the company becomes ■competent to transact all kinds of business for which it is ■established. Here are duties and limitations imposed. In such a case, it is not unreasonable that the company should be required to deposit a statement, as provided by section ■3654, of the amount of its capital stock, specifying the ■amount paid and unpaid, and the amount of unpaid assessments on stock.
Again, the charter, in section 1, authorizes the company to hold such real estate only as shall be necessary for the transaction of its business, or may be taken as security for ■or in payment of a debt. Section 3654 properly provides, that in the statement of an insurance company’s condition, there shall be specified the value of the real estate owned by such company, where it is situate, and the value of the "buildings thereon.
Again, under the charter, it is not lawful for the corporation to use or employ any part of its capital stock, money of other funds, in buying or selling goods, wares or merchandise, nor in the purchase of real estate, except as provided in the first section of the charter; nor shall the company trade in the business of exchange brokerage, or in any manner engage in the business or operation of banking. An essential aid, in the enforcement of these prohibitions, is afforded by requiring in the company’s statement a specification of its assets and liabilities.
Furthermore, by the charter it is provided, that the president and directors shall declare such dividends of the profits of the business of the company as shall not impair, nor in anywise lessen the capital stock of the same. Whether this rule is disregarded or complied with, the superintendent of insurance may be enabled to discover through a statement *272 of the company’s condition, which, in addition to the company’s assets and liabilities, shall specify, in accordance with section 3654, the amount of dividends declared and due, and remaining unpaid—the amount of dividends, either cash or scrip, declared but not due—and the amount of dividends paid during the j^ear.
In Chicago Life Insurance Company v. Needles, 113 U. S-574, we find facts and conclusions bearing directly upon the decision we have reached in the case at bar. The Chicago Rife Insurance Company was incorporated by special act of the General Assembly of Illinois, and vested with power to carry on the business of life insurance. Two years after the charter was granted the company, a general law of the state was approved and took effect, which required, among-other things, that every life insurance company incorporated in Illinois, should transmit to the auditor of state, on or before the first day of March, in each year, a sworn statement 'of its business, standing, and affairs, in the form prescribed or authorized by law, and adapted to its business,- and empowered that officer to address' inquiries to any company in relation to its doings or condition, or any other matter connected with its transactions, to which it was required to make prompt reply; and made it the auditor’s, duty to make, or cause to be made, an examination of its condition and affairs, whenever he deemed it expedient to-do so, or whenever he had good reason to suspect the correctness of any annual statement, or that its affairs were in an unsound condition. The auditor of state acting under this and a subsequent statute, made an examination into-the affairs of The Chicago Rife Insurance Company, found it to be insolvent, instituted proceedings to wind up its affairs, and a final judgment was rendered enjoining the company from further prosecution of 'its business. From that judgment a writ of error was prosecuted to the Supreme ■ Court of the state, and to reverse the judgment of that court error was prosecuted in the Supreme Court of the United States.
It was contended by counsel, that the obligation of the contract which the company had with the state, in its orig- *273 inal and amended charter, would be impaired, if the company were held subject to the operation of subsequent statutes regulating the business of life insurance, and authorizing the courts, in certain contingencies, to suspend, restrain, or prohibit insurance companies incorporated in Illinois from further continuance in business.
“This position,” said Justice Harran, delivering the opinion of the court, “cannot be sustained, consistently with the power which the state has, and, upon every ground of public policy, must always have, over corporations of her own creation. Nor is it justified by any reasonable interpretation of the language of the company’s charter-The right of the plaintiff in error to exist as a corporation,, and its authority, in that capacity, to conduct the particular business for which it was created, were granted, subject to the condition that the privileges and franchises conferred upon it should not be abused, or so employed as to defeat the ends for which it was established. Although no such condition is expressed in the company’s charter, it is necessarily implied in every grant of corporate existence.
“Equally implied, in our judgment, is the condition that the corporation shall be subject to such reasonable regulations, in respect to the general concfuct of its affairs, as the legislature may, from time to time, prescribe, which do not materially interfere with or obstruct the substantial enjoyment of the privileges the state has granted, and serve only to secure the ends for which the corporation is created. If this condition be not necessarily implied, then the creation of corporations, with rights and franchises which do not belong to individual citizens, may become dangerous to the public welfare through the ignorance, or misconduct, or fraud of those to whose management their affairs are intrusted.”
The same doctrine is recognized in Commonwealth v. Farmers and Mechanics' Bank, 21 Pick. 542, as applied to the visitatorial power of the state over banks. And the law is clearly stated, to the sanie effect, in the. Opinion of the Justices, 9 Cush. 604, in answer to the question submitted to them by the senate: “Is the corporation known *274 as the ‘ Provident Institution for Savings in the Town of Boston/ chartered in the year 1816, subject to the general laws of the Commonwealth relating to savings banks and institutions for savings, passed since the granting of the charter aforesaid?” The judges in their answer express the opinion, that the legislature, by giving to the institution in Boston the privilege of being a corporation, and of managing its proper business, did not relinquish any power of legislating on all proper subjects of legislation; that the legislature could not be deprived of the power it holds for the public good, by any doubtful construction of the charter; that the position that the legislature had granted away any of its appropriate powers of legislation, could be supported only by clearly showing such grant; and that there appeared to be nothing in the charter of the Provident Institution for Savings in Boston, to exempt it from the provisions of the general laws, passed since the date of the charter, relating to savings banks.
We come now to consider the question, whether the judgment in the suit brought against the defendant, in July, 1886, in the court of common pleas of Franklin county, to recover a penalty, is a bar to this action; whether by reason of the determination in that suit, the right to require the company to prepare and deposit in the office of the superintendent of insurance a statement of its condition, is res judicata. We do not think that the cause of action in the two cases can be held to be identical. In the one case, it was a failure of the company to file the statutory statement of its condition on the 31st day of December, 1885, and the suit was to recover the penalty prescribed by statute for such failure. In the present case, it is a refusal of the. company to file such statement of its condition on the 31st day of December, 1892, and the proceeding is in mandamus to enforce a specific duty.
It is urged however, in behalf of the defendant, that the subject matter now in controversy was drawn in question, and within the issue in the former judicial proceeding which terminated in a regular judgment on the merits. But the rule is well settled, that an adjudication affects no claims *275 which the parties had no opportunity to litigate. There are many cases in which the judgment of a court will be res judicata as long as the circumstances continue the same, but will cease to be so whenever any change takes place in those circumstances. People v. Mercein, 3 Hill 416; Jones v. Petaluma, 36 Cal. 230. Thus, even where title has been tried in a writ of entry, intervening events affecting the issue may be shown, to prevent a former judgment from being conclusive; and the demandant may introduce evidence of a newly acquired title by deed duly delivered sih.ee the commencement of the former suit. Perkins v. Parker, 10 Allen 22. In Hall v. Levy, 10. L. R. C. P. 154,, it was held, that a record works an estoppel only as to those matters capable of being controverted between the parties at the time of the proceedings in the action; and therefore although a deed may have been proved to be valid in one action, yet it may be shown in a subsequent suit to have become invalid, if the circumstances avoiding it have happened after the determination of the earlier action..
These cases, and others like them, rest upon the principle that after acquired rights and change of circumstances may prevent the former judgment from operating as an estoppel in subsequent judicial proceedings. And to apply the principle to the case under consideration, where a judgment is rendered, by a court of competent jurisdiction, in favor of a party to the suit, for the reason that otherwise, under an existing law, a chartered right of such party might be placed in peril, the decision should not be conclusive in a subsequent action between the same parties, when the law has been so amended that such right is thereby assured.
The originals of sections 3654 and 3655 of the Revised Statutes, are found in sections 19 and 21 respectively of “An act to regulate insurance companies,” passed April 15, 1867 (64 Ohio Laws 157). Subsequently, it was provided by section 3234 of the Revised Statutes of 1880, as follows: “Corporations created before the adoption of the present constitution, which take any action under or in pursuance of this title (Title II, Part Second, Corporations), shall thereby and thereafter be deemed to have consented, and *276 shall be held, to be a corporation, and to have and exercise all and singular its franchises, under the present constitution, and the laws passed in pursuance thereof, and not otherwise.” To be a corporation under such conditions, is to be placed on the same footing with corporations formed under general laws, which may, from time to time, be altered or repealed. How reasonable soever might be the regulation that a statement of the condition of an insurance company, created before the adoption of the present constitution, should be filed with the superintendent of insurance, the question would at once be suggested, whether a compliance with such regulation might not be deemed a consent to be a corporation under the present constitution, and a waiver of the companj'-’s chartered rights.» Section 3234 was accordingly amended, May 18,1886, (83 Ohio Raws 201), b3r adding the proviso: “That ai^ fire insurance company so created, complying with the requirements of section 3655, shall not be deemed to have consented, and shall not be affected by the provisions of this section by reason of such compliance.” While the law thus stood, the action was instituted,- in July, 1886. b3r the attorney general, in the name of the state, .in the court of common pleas of Franklin county, to recover the penalty from The Eagle Insurance Company for its failure, neglect and refusal to file the statement required by section 3654. As it was a compliance with section 3655, which, under the amendatory proviso was not to be deemed a consent to be a corporation under the present constitution, the court of common pleas overruled the demurrer of the state, and rendered judgment for the compare The court thereby declined, virtualfy, to visit a penalty upon the company for non-compliance with the requirements of section 3654, when a voluntary compliance, at that time, might have involved in doubt, and perhaps in peril, the chartered privileges of the company.
But by act of March 8, 1892, (89 Ohio Raws, 73), the proviso to section 3234 was enlarged, so that any fire insurance. company created before the adoption of the present constitution, complying with the requirements of sections 3654 and 3655, would not be deemed to have consented to *277 be a corporation, and to exercise all its franchises under the present constitution, and the laws passed in pursuance thereof. Had the proviso to section 3234 contained what it now does, and when this action was begun, the judgment in the former suit to recover the statutory penalty would doubtless have been different from what it was. Under the statute, as it now is, the filing of a statement under section 3654, with the superintendent of insurance, can cast no doubt or shade upon the inviolability of the defendant’s charter, and the prosecution of a proceeding like the present, to enforce a compliance with the provisions of that section, shonld not, we think, be barred by the adjudication in the former suit. The obligation of the contract between i the state and the defendant not having been impaired, and the state not being estopped to maintain this action by the judgment in the court of common pleas of Franklin county, we are of opinion, that a peremptory writ should be awarded.

Judgment accordingly.