[Civ. No. 1972. Third Appellate District.—May 29, 1919.]

CHARLES F. SILVA et al., Appellants, v. RECLAMATION DISTRICT No. 1001 et al., Respondents.

[1] RECLAMATION DISTRICTS — ACTION TO CANCEL REASSESSMENT — PREVIOUS JUDGMENT NOT RES ADJUDICATA.—In an action to cancel and annul a reassessment for reclamation purposes made pursuant to the provisions of section 3466½ of the Political Code, the judgment declaring a previous assessment for the same purpose null

and void is not *res adjudicata* of the questions raised where the objections to the previous assessment were obviated before the reassessment was made.

[2] JUDGMENTS—SUBSEQUENT CAUSE OF ACTION—RES ADJUDICATA.— A former judgment constitutes no defense to a cause of action accruing between the same parties on the same subject matter after the rendition of such subject.

[3] RECLAMATION DISTRICTS — REASSESSMENTS — FUTURE WORK — CONSTRUCTION OF CODE.—Section 3466½ of the Political Code is not limited to cases wherein the work of reclamation has been completed, but the reassessment may be made for the payment of work in the future as well as for that already done.

[4] ID.—DESCRIPTION OF WORK—SUFFICIENCY OF PLANS.—The statement by the board of trustees of the reclamation work to be done need not have the certainty and completeness of detail that would be necessary for the construction of the work, but only a plan showing in some detail and with some degree of certainty the extent and character of the proposed work.

[5] ID.—APPROVAL OF PLANS BY STATE RECLAMATION BOARD.—Where the reclamation district was organized and the general plan of reclamation was adopted by the trustees prior to the enactment of the statute creating the state reclamation board, it was not necessary for the trustees to submit to the state reclamation board the plan of reclamation as modified after such statute was in force, where the modifications did not materially affect the original general plan.

[6] APPEALS — SUFFICIENCY OF EVIDENCE TO SUPPORT FINDINGS — CONSIDERATION BY APPELLATE COURT.—The appellate court will not pass upon the question as to whether certain findings are supported by the evidence where the respondent in its brief calls attention to circumstances disclosed by the record which would seem to be of sufficient probative force to justify the conclusions of the trial court and the appellants fail to reply thereto.

[7] RECLAMATION DISTRICTS — ACTION TO CANCEL REASSESSMENT — NEWLY DISCOVERED EVIDENCE—EXAMINATION OF LANDS IN DISTRICT—NEW TRIAL.—In an action to cancel and annul a reassessment, a new trial will not be granted on the ground of newly discovered evidence, consisting of proof that the commissioners in making the reassessment did not view or inspect all of the lands in the district, where the commissioners, in making the previous assessment, had gone over all the land in the district, and the commissioner by whom the plaintiffs would prove this additional fact was called as a witness by them on the trial and was interrogated as to what he did in making said reassessment, but he was not asked if he and his associates, in making such assessment, visited all the lands in the district.

APPEAL from a judgment of the Superior Court of Sutter County. G. W. Nicol, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Driver & Driver for Appellants.

W. H. Carlin for Respondents.

BURNETT, J.—The action was to cancel and annul an assessment made for reclamation purposes. The district was organized in April, 1911, and it has been in effective operation ever since. On the seventeenth day of July, 1911, the board of trustees of the district presented to the board of supervisors of Sutter County—in which county the greater portion of the lands of the district is situated, the residue being in Placer County—the original plans for reclamation. The usual proceedings were had and an assessment for $851,730 was levied upon the lands of the district and this was fully paid. This, however, was insufficient to complete the contemplated work, and on September 25, 1914, the trustees of the district presented another report to the board of supervisors, showing the work already accomplished and the work to be done, together with its estimated cost, and asking for another assessment of five hundred thousand dollars. The request was granted, and the assessments were all paid except those of appellants herein and one C. F. Roth. They contested the assessment in the superior court of Sutter County, and after trial had, their assessments were held to be invalid and they were canceled and annulled. Thereupon, the board of trustees proceeded in accordance with section 3466½ of the Political Code to obtain a reassessment of the two tracts of land owned by appellants and said Roth and they caused a modification and amplification to be made to their report of October 25, 1914, and filed it with said board of supervisors on April 8, 1916. The same commissioners who levied the second assessment were appointed by the supervisors to make the reassessment on the lands of appellants and Roth. They proceeded with the work and made their report as required by law. Objections were made to this reassessment, but they were overruled by the board of

supervisors, and the report of the commissioners was approved and ratified. Thereafter, this action was brought in the superior court to annul said reassessment levied upon the lands of plaintiffs, but the judgment was against their contention, and from that judgment sustaining the action of said commissioners the appeal has been taken.

[1] 1. The first contention of appellants is that the question is *res adjudicata* by virtue of said judgment declaring the said second assessment to be null and void. Appellants indulge in a learned and comprehensive discussion of the doctrine, which is quite interesting and instructive, but we are satisfied that the principle does not apply to the case at bar. The main reason for holding said assessment invalid was that the "plans, location, and estimates of the costs of reclamation of said reclamation district adopted by its board of trustees and reported to the board of supervisors were too indefinite, uncertain, and incomplete to meet the requirement of the law." This objection was obviated, however, by the additional specifications to which we have alluded, but it is not deemed necessary to point them out specifically.

It may be stated, also, that the other important finding that the assessments were not levied on the various tracts of land belonging to appellants according to the respective benefits accruing thereto from said improvements would not be controlling, for the reason that a different apportionment was made by this assessment. But a more satisfactory and conclusive answer to the proposition is that we are herein dealing with a different cause of action. The said judgment of November 13, 1915, was based upon a cause of action, arising out of the assessment of September 25, 1914, whereas the cause of action involved herein must have grown out of the assessment made in 1916, after said former judgment was rendered.

[2] Appellants do not deny that the rule is: "A former judgment constitutes no defense to a cause of action accruing between the same parties on the same subject matter after its rendition." (*Jones* v. *Petaluma,* 36 Cal. 230; *Shanklin* v. *Gray,* 111 Cal. 88, [43 Pac. 399]; *People* v. *Rodgers,* 118 Cal. 393, [46 Pac. 740, 50 Pac. 668]; Code Civ. Proc., sec. 1911.)

However, if the facts relating to the two assessments were identical or similar, the former judgment would be, of course, entitled to careful consideration, but it would not be controlling, since it was the judgment only of the trial court. The course pursued, it may be repeated, in reassessing appellants' property, was taken by virtue of the authority conferred by said section 3466½ of the Political Code providing: "In all cases in which an assessment shall have been levied or shall hereafter be levied for reclamation purposes upon the lands embraced within any reclamation district now or hereafter formed or created, is thereafter adjudged invalid by any court of competent jurisdiction, or shall be adjudged invalid as to any tract or tracts of land, within said district, or if, for any reason, any tract or tracts of land within such district shall not have been charged with said assessment, . . . a subsequent reassessment of such tract or tracts of land may be made separately for the purpose of charging said land with its proper proportion of the costs of reclamation," etc. The section further provides that such reassessment must be made and approved in the same manner as other assessments.

[3] 2. We do not think that the application of this section is limited to cases wherein the work of reclamation has been completed. The reassessment may be made for the payment of work in the future as well as for that already done. There is nothing in the language of the section which supports this theory of appellants. The reassessment is not for the purpose "of paying costs already incurred," but it is to be levied for "reclamation purposes," and to understand the scope of the expression we must recur to section 3459 of the same code, referring to the "additional assessment." Therein it is provided that in order to secure an additional assessment where the first was not sufficient, the trustees of the district must present to the board of supervisors "a statement of the work done or to be done, and its estimated cost," and the said board of supervisors is required to appoint commissioners to assess the amount of such estimated cost as a charge upon the land in the district. It is necessarily implied by the term "reassessment" used in said section 3466½ that the levy is for the same purposes as are contemplated by said section 3459.

[4]   3. The plans and statement, including the modifica-
tions to which we have referred, prepared by the board of
trustees of the district, answer sufficiently the requirement
of the law as interpreted by the supreme court in *Meyer*
v. *Reclamation District,* 172 Cal. 104, [155 Pac. 635];
*Spurrier* v. *Reclamation District,* 172 Cal. 157, [155 Pac.
840], and some earlier decisions. As stated in the Meyer
case: ''The code does not require that such statement shall
have the certainty and completeness of detail that would
be necessary in a contract for the construction of the works,
but only 'a plan showing in some detail and with some
degree of certainty the extent and character of the proposed
works.' It is difficult to draw a line of certainty and full-
ness of detail to which such statements must conform.''

[5]   As to the objection that the plan of reclamation
adopted by the trustees of the district was not previously
approved by the state reclamation board, as provided by
the statute creating said board (Stats. 1911, Extra Sess.,
p. 117), it is pointed out by respondent that said statute
was enacted after the organization of this district and the
adoption by the trustees of the general plan of reclamation.
It is true that certain modifications and additions therein
were afterward made when said statute was in force, but
we do not think they were of such vital importance as to
require their submission to said board for its approval. As
long as the modifications did not materially affect the gen-
eral plan it was within the discretion of the trustees to
adopt them without the direction of said board. The pur-
pose of said statute was, of course, to secure, as far as
practicable, harmony and uniformity among the various dis-
tricts in the promotion of reclamation throughout the
Sacramento and San Joaquin Valleys, and we can see noth-
ing in the course pursued herein tending to nullify or de-
feat such purpose.

It is also suggested by respondent that the fact that these
works have been in operation since July, 1911, that a large
sum of money has been expended therefor, and that the
work of reclamation has been done openly and without pro-
test from said state reclamation board would raise a pre-
sumption of the acquiescence and approval of said board.
It is further claimed that such question cannot be raised by

a property owner, but these considerations, while worthy of attention, we deem it unnecessary to determine.

[6] 4. Certain findings as to the sufficiency of the plans, reports, and estimates made by the trustees in reference to drainage canals, bridges, a pumping plant and a certain road and telegraph lines within said district, and, also as to the benefit to accrue to the land of appellants from these contemplated improvements are challenged as not supported by the evidence. Respondent, though, in its brief calls attention to circumstances disclosed by the record, which seem to be of sufficient probative force to justify the conclusions of the trial judge, and, as appellants have not chosen to reply to said brief, we do not feel called upon to notice these matters more specifically.

[7] 5. A new trial was sought on the ground of newly-discovered evidence, appellants relying upon the affidavit of Louis Tarke to the following effect: "That he is one of the commissioners of assessment who levied that certain reassessment on the lands of Silva and Randall and C. F. Roth in Reclamation District No. 1001 on the seventeenth day of March, 1916; that Lee G. Roberts and A. A. McRae were the other two commissioners; that in levying said assessment all of said commissioners viewed the lands of Silva & Randall and C. F. Roth in said district, but did not view or inspect any of the other lands of said district upon said reassessment, nor in making said reassessment."

But it appears that these commissioners had made the previous assessment and at that time had gone over all the land in the district. As to that Mr. Tarke testified: "Before the eight hundred and fifty-one thousand dollar assessment was put on we estimated the value of the land before reclamation; that is, we went all over the district and placed a value on the land—what it would be worth without reclamation according to the situation and according to the relative elevation and according to the quality of the land and the general situation of the land." It would have been idle for them to do the same thing again. Assuming, therefore, for the sake of argument, that all of the lands should have been visited by the commissioners to enable them to make a proper reassessment of the lands of appellants and Roth only, the requirement was substantially met. Moreover, the showing of diligence was entirely in-

adequate.   Mr. Tarke was called as a witness by plaintiffs and interrogated as to what he did in making said reassessment, and there is no excuse for the failure of appellants to ask him if he and his associates at that time visited the other lands in the district.   The rule as to motions of this kind based upon such showing is quite familiar, and it is manifest that the court's action in denying a new trial is amply justified.

It is probably not necessary to allude to the importance of the work of reclamation undertaken in this and other districts and how largely it affects the welfare of the community and the state.   Indeed, this consideration has been forcibly and even eloquently set forth by the supreme court in some of the cases cited.   The work should not, of course, be impeded by vexatious litigation nor jeopardized by attaching too much weight to unimportant matters of pro-. cedure.   On the other hand, notwithstanding the great importance of these schemes, the substantial rights of the property owners must be protected, but in the present in. stance we are led to believe that appellants have suffered no legal injury and the judgment is affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 28, 1919.

All the Justices concurred.