[Civ. No. 29757.   Second Dist., Div. One.   Oct. 10, 1966.]

CHESTER L. SOLOMONT et al., Plaintiffs and Respondents, v. POLK DEVELOPMENT CO., et al., Defendants and Appellants.

Thomas E. Garcin, Beardsley, Hufstedler & Kemble, Seth M. Hufstedler and John Sobieski for Defendants and Appellants.

Fulop, Rolston & Burns, Irwin M. Fulop, Marvin G. Burns and Lowell R. Marks for Plaintiffs and Respondents.

LILLIE, J.—In May of 1959 appellant company purchased a parcel of real property in Santa Maria for cash and a deed of trust (covering the unpaid balance) which was made subordinate to a construction loan thereafter obtained in the sum of $300,000 for a 50-unit apartment building. Subsequently a "cost breakdown" submitted to the bank by appellant Rudnick certified that the total cost of construction would be $355,600. Construction of the building commenced on June 3, 1959. At or about this same time appellant Rudnick separately contacted the respondents, stating to them that he needed $80,000 to complete the project, the total cost of which would be $421,000. He proposed that this sum ($80,000) be raised by the formation of a limited partnership to be known as "Bunny Court," appellant company being designated as general and executive managing partner. On June 5 partnership interests of $10,000 each were sold to respondents Sheridan and Shields who executed the partnership agreement prepared by Rudnick's attorney; on June 7 respondent Solomont invested $40,000 in the enterprise, and on June 8 interests in the sum of $10,000 were purchased by respondents Leonard and Harry Schwimer, all three latter respondents executing the partnership agreement on the above respective dates. The building was completed and transferred to the partnership which operated it for about three years. Eventually it was lost on foreclosure; respondents brought this action to recover their investment—the partnership had theretofore become insolvent.

The complaint sought rescission of the agreement based upon alleged violations of the California Corporate Securities Act (Corp. Code, §§ 25000 et seq.), with alternative counts for

fraud, dissolution and winding up, as well as an accounting. The relief granted was an award of damages representing the amounts paid by respondents for their respective interests less contributions received by each of them from the operation of the apartment building. The appeal is from the judgment.

A permit concededly was not sought from the Corporation Commissioner for the sale of the interests in suit; basic, therefore, to the award of damages at bar is the sufficiency of the claim that the partnership was not validly formed and consequently did not come within the exemption stated in section 25100, subdivision (*l*), Corporations Code, to the effect that such a permit is not required in transactions involving "Any partnership interest in a . . . limited partnership were certificates are executed, filed and recorded as provided by Sections 15502 and 15525 of the Corporations Code of the State of California, except partnership interests when offered to the public." Prior to its decision, the trial court indicated by certain observations from the bench that the case appeared almost indistinguishable from *Rivlin* v. *Levine,* 195 Cal.App.2d 13 [15 Cal.Rptr. 587], where, upon the circumstances there presented, the court determined that a limited partnership interest was not a "security" within the exemption of section 25100, subdivision (*l*), *supra,* if the partners did not have the right of mutual selection of all their copartners. In the present proceeding, the investors not having been brought together as a group, a finding was eventually made that "There was no element of mutual selection of those who would constitute the membership of the purported limited partnership." The assessment of damages stems not only from the above and related findings but from further findings that a fiduciary relationship existed between the parties which defendants breached by misrepresentations as to the actual cost of the building. Appellants challenge the sufficiency of the evidence to support the above findings. With respect to *Rivlin,* they argue that it is the only authority which holds that the requirement of "mutual selection" must be met before a bona fide partnership is created and, even if such holding be accepted, the case is distinguishable from that at bar.

The present case consumed some seven days of trial. █ Out of the mass of evidence received, the following salient facts emerge which, at this stage of the proceedings, must be necessarily viewed in the light most favorable to respondents: Appellant Rudnick, acting for appellant company, selected the investors at random. Respondents Sheridan and Shields were

the first to pay their money and sign the agreement which was drawn by Rudnick's attorney. Neither knew the identity of the officers, directors or shareholders of appellant company, nor did they know the identity of the other investors. The same was true of respondent Solomont and respondents Schwimer who executed the agreement two to three days later (as the case may be) after Sheridan and Shields. Rudnick, it appears, endeavored to sell an interest to a brother of the Schwimers, but he declined to buy—it is suggested by respondents that he was the only member of the group approached by Rudnick who could be classified as a "sophisticated investor." Rudnick admitted, in substance, that he sought out investors among his many friends who would not give him trouble, who would not take an active interest in the enterprise, and who had money. At no time thereafter did all of the limited partners meet one another, although Solomont and the brothers Schwimer all saw the signatures of Sheridan and Shields on the agreement subsequently presented to them for execution. It appears that respondents' acknowledgments were not taken by the notary public in conformity with section 1185 of the Civil Code; it further appears that section 15502, subdivision (3) of the Corporations Code, as then in effect, was not complied with—although the certificate of limited partnership recites that the principal place of the partnership's business is Los Angeles, it was never filed in the office of the county clerk of that county, and the same section was not promptly complied with in that the certificate was not recorded in the office of the county recorder of Santa Barbara until nine months later.

There were other deficiencies evidencing noncompliance with section 15502, *supra*. Although the statute provides that the certificate shall state the term for which the partnership is to exist, as well as the amount of cash contributed by each partner, the certificate erroneously fixes the date of commencement from the date of its execution whereas, in fact, it did not commence until the completion of the building; too, although the pertinent article of the instrument makes reference to the total contribution of $80,000 by the partners, such funds were deposited in the general corporate account of appellant company and used by that corporation.

There were still other deviations in the certificate from accepted procedures. Thus, although it is provided that the participation in the profits of the enterprise by the limited partners should be at least 50 percent, and while it is further

provided that ordinarily articles of limited partnership shall require the distribution of profits exclusively to contributors of tangible assets until 100 percent of the value has been returned (Cal. Admin. Code, tit. 10, ch. 3, subch. 2), the present certificate gives 60 percent of the net profits to the appellant company, as general partner, which sum is payable before the limited partners have recouped their investment.

The partnership did not function as an entity until March 16, 1960, on which date the building (having been completed some two months earlier) was conveyed to the partnership for $421,000 as agreed in the partnership instrument. A bank account was opened a few days later in the name of the partnership; and, as stated earlier, the partnership then operated the building for approximately three years. There was evidence that the "construction costs" of the building, representing the above sales price, included payments of "bonuses" to Rudnick ($5,000), his son ($2,500) and Rudnick's business associate ($2,500); also charged to the cost of construction were sums aggregating $23,397.38 for office and entertainment expenses for approximately two years, all in the face of respondent testimony that appellants did not disclose their intention to make a profit from the construction of the building.

In December of 1960 appellant company sold its general partnership interest to Rudnick. The certificate of partnership was amended to provide therefor, but the court found that respondents' consent thereto was obtained by fraud. Thereafter the operation did not prosper; there was testimony that the building fell into a state of disrepair and became "completely run down." Eventually, Rudnick gave notice that he was withdrawing as general partner. Soon thereafter the present litigation was commenced.

Needless to say, appellants produced evidence which could have called for the drawing of inferences contrary to those reached by the trial court. Thus, the deficiencies or deviations above referred to are described by appellants as "technical defects" which could not affect the validity of the partnership certificate; it is emphasized that none of the respondents requested information as to the identity of the other investors (and the court so found), and it is further argued that all of the respondents were "sophisticated investors" or businessmen either with prior experience in limited partnerships or in enterprises similar to that in suit. ■ The rule is a familiar one, however, that where any inference can be drawn to support the findings of the trial court, an appellate court

may not make determinations of factual issues contrary to those made below. (*Smith* v. *Bull*, 50 Cal.2d 294, 306 [325 P.2d 463].) ▮ Wholly apart from the mutual selection test of *Rivlin*, therefore, these deviations and other evidentiary matters support the trial court's conclusion that a bona fide partnership was not formed, from which it follows that the entity was not an exemption within the meaning of section 25100, subdivision (*l*), Corporations Code, *supra*.

Contrary to appellants' suggestion, the failure to comply with the recording statutes was no mere triviality. While section 15502, Corporations Code, does not specify the time within which such certificate must be recorded, it has been held that the certificates must be recorded within a reasonable time (*Stowe* v. *Merrilees*, 6 Cal.App.2d 217 [44 P.2d 368]) determinable under the circumstances of the case. If appellant company had been sued during the 10-month interval (from formation to recordation), upon discovery that such company was the general partner of an improperly formed limited partnership, respondents would have been liable as general partners unless, pursuant to section 15511, Corporations Code, they first renounced their interests in the profits of the business. (*Siebold* v. *Berdine*, 61 Cal.App. 158 [214 P. 655].) ▮ Nor was the failure to secure proper acknowledgments of respondents' signatures simply a technicality; absent such acknowledgment, a certificate of limited partnership is fatally deficient. (*Russell* v. *Warner*, 96 Cal.App.2d 986 [217 P.2d 43].) To appellants' assertion that the certificate was regular on its face and therefore any imperfections in the several procedures just discussed do not abrogate the exemption of section 25100, subdivision (*l*), *supra*, citing *Farnsworth* v. *Nevada-Cal. Management, Ltd.*, 188 Cal.App.2d 382 [10 Cal. Rptr. 531], we note that *Farnsworth* also holds that the exemption only applies to bona fide partnerships, and ''bona fide'' has been defined as ''without fraud.'' (*Covert* v. *State Board of Equalization*, 29 Cal.2d 125, 134 [173 P.2d 545].) ▮ Several findings of fraud were made by the trial court —we need only mention the fraudulent concealment by appellants of their purpose, subsequently carried out, to make a profit on the sale of the apartment building by the payment of bonuses which were included within construction costs. The parties were then clearly in a fiduciary relationship with one another, since that relationship can arise during negotiations for the partnership (*Prince* v. *Harting*, 177 Cal.App.2d 720 [2 Cal.Rptr. 545]); the partnership having been induced by

fraud, it was void *ab initio*. (*Miller* v. *Kraus* ▮ (Cal.App.) 155 P. 834.) ▮ Finally, where the parties purport to establish a partnership to engage in business at a future time or upon the happening of a contingency, the partnership does not come into being until the time specified or until the contingency is removed (*Kersch* v. *Taber*, 67 Cal.App.2d 499 [154 P.2d 934]) ; stated otherwise, an agreement to form a partnership does not ripen into a partnership until the enterprise is launched. (*Taylor* v. *Nelson*, 26 Cal.App. 681, 682 [147 P. 1189].) ▮ Appellants criticize the court's findings that this was a partnership *in futuro*, in which respect it is pointed out that the partnership had the contract right to buy the building upon its completion ; opposed to this assertion, however, is evidence (already adverted to) that respondents' money was deposited in appellant company's bank account, and that during the 10-month period intervening from the execution of the certificate and its proper recordation the partnership had no assets, no bank account, and no right to share in the profits of the building—indeed, it did not even have title to the land for which respondents had supplied their money. Under all these latter circumstances, the evidence substantially supports the finding reciting in part that ''The parties to said agreement did not, at the time they signed same, intend to form a partnership, general or limited, which would presently function or operate.''

Before our discussion of *Rivlin's* bearing on the present appeal, we briefly allude to appellants' additional claim that any defect in the original agreement was cured by the amended certificate, substituting Rudnick as general partner, which was signed by all the parties ; according to appellants, this amended certificate created a new limited partnership. As already mentioned (and discussed by respondents in their brief), the trial court found that such amendment was voidable by reason of fraud ; too, the instant claim is supported by neither discussion nor argument. ▮ Applicable, therefore, is the rule that ''A point which is merely suggested by appellant's counsel, with no supporting argument or authority, is deemed to be without foundation and requires no discussion.'' (*In re Steiner*, 134 Cal.App.2d 391, 399 [285 P.2d 972].)[1]

---

[1]No reply brief having been filed by appellants within the time requested by them and granted by this court, there is consequently no denial of the probative force inherent in the various evidentiary matters pointed out by respondents. We can either assume that respondents' argument was incapable of contradiction (*Larson* v. *Abdun-Nur*, 118 Cal.App. 269, 271 [4 P.2d 957]) or accord appellants' mere suggestion

Appellants argue that the present action was conceived by respondents, and thereafter tried, in an effort to fit it into the pattern, factually and legally, of the *Rivlin* case. Factually, according to appellants, it is distinguishable from the present controversy; some 16 factors are cited to sustain their assertion of such distinguishability. While conceding that the facts of the two cases contain minor differences, respondents nevertheless list some 14 instances in which the material facts are strikingly similar. It was the province of the trial court, not ours, to weigh the worth of these respective claims. ██ *Rivlin* is applicable, and this is so because the "mutual selection" requirement test, upon which that case turned, is simply declarative of established partnership law. "Partnership being a relation of trust, confidence and mutual agency, it follows that it must be founded on contract and that no person can become a partner except by the consent of all the others. *This is true at the formation of the relation,* and thereafter, and one partner at no time can introduce a third person into the firm without the consent of all the others. (Italics added.)" (1 Rowley on Partnership (2d ed. 1960) p. 499.) The italicized statement immediately above merits emphasis here because appellants have contended that none of the respondents requested information as to the identity of the other investors. ██ But the burden in that regard lay with Rudnick (acting for his company) and not respondents. Respondent Solomont had never met respondents Shields and Sheridan, nor was he told that they were to be limited partners until the day that he signed the agreement. Too, Solomont was never advised by Rudnick at any time as to the identity of the officers and directors of appellant company, the general partner designated in the agreement. The principle (above italicized), as clearly declared, was operative at this critical time, not afterwards. As shown in *People* v. *Sidwell,* 27 Cal.2d 121, 127 [162 P.2d 913], the time for testing the validity or invalidity of a transaction is at the moment of sale. What happens subsequently will not cure the illegality, the doctrine of "relation-back" not being applied in this area of the law. (*Stonehocker* v. *Cassano,* 154 Cal.App.2d 732, 736 [316 P.2d 717].) In the case last cited defendant sold stock under a permit of the Corporation Commissioner which, among other things, required the latter's written consent. Before such

of error the scant attention given such claims by the *Steiner* court. (*Silva* v. *Reclamation Dist. No. 1001,* 41 Cal.App. 326, 332 [182 P. 786].) We have chosen a middle course since much of appellants' opening brief is devoted to an attack on almost all the findings.

consent was obtained, plaintiff paid out money for his shares of stock; eventually consent was secured and the sale completed. The court held that the subsequent conduct of the parties did not validate the sale made in violation of law.

In our case, therefore, if the law requires a permit at the time of offering, which is defined to be a sale (Corp. Code, § 25009), then certainly the same test should govern in determining whether the exemption of section 25100, subdivision (*l*) applies. In the final analysis, ''Whether a particular instrument is to be considered a security within the meaning of the statute is a question to be determined in each case.'' (*Oil Lease Service, Inc.* v. *Stephenson,* 162 Cal.App.2d 100, 108 [327 P.2d 628].) The same is true, of course, with respect to the existence of a bona fide partnership. (*Denning* v. *Taber,* 70 Cal.App.2d 253, 256 [160 P.2d 900].) The court did not err in basing its decision on the reasoning of *Rivlin.* The two cases are not exactly apposite, indeed very few controversies can thus be categorized, but there is more than sufficient similarity to bring this proceeding within its ambit.

Some eight separate findings were made on the issue of fraud; some, but not all, are challenged by appellants in a short recital of the evidence viewed in the light most favorable to their position—and, as noted already (footnote, *supra*), they have not filed a reply brief by way of answer to the extensive discussion by respondents of this phase of the appeal. Thus they have failed to comply with the rule that where the insufficiency of the evidence to support the findings is urged, ''Such contention requires defendants to demonstrate that there is no substantial evidence to support the challenged findings.'' (*Nichols* v. *Mitchell,* 32 Cal.2d 598, 600 [197 P.2d 550].) Preliminarily, the following statement is here pertinent: ''Because of the diversity of factors and the differing intelligence of those guilty of fraud and their victims, the function of the trial judge in fraud cases is particularly significant. It is the duty of the judicial officer who sees and hears the witnesses to determine the weight and effect of their evidence; if there is any substantial showing of fraud the trial court must determine whether it outweighs the testimony presented by the opposing side; and his decision is ordinarily final in matters of this kind; appellate courts will not disturb a finding of fraud if there is any substantial evidence to support the lower court's decision. [Citations.]'' (*Vogelsang* v. *Wolpert,* 227 Cal.App.2d 102, 110 [38 Cal.Rptr. 440].)

The findings on fraud are substantially supported. The court determined, which finding is not challenged, that

the parties were in a fiduciary relationship with one another; it reached that logical conclusion in view of the preliminary negotiations had between Rudnick and respondents, the obligations of trustees being applicable to persons about to become partners. (*Prince* v. *Harting, supra,* 177 Cal.App.2d 720.) Although the duty of voluntary disclosure of any profit to be gained then became incumbent on Rudnick, he concealed from respondents his intentions in that regard. According to Rudnick, "there was no need" for any discussion of any profit he would receive from the construction of the building. Subsequently, and prior to recording the deed to the building, he continued to conceal from respondents the profit he had made; according to his testimony, "It was none of their business." The same is true of the bonuses paid to his son and to his attorney. Being in a fiduciary relationship with respondents, Rudnick should have also advised them, contrary to what was by him then stated and reflected in the certificate of partnership, that a sum considerably less than $80,000 was needed to complete the building. As to this latter representation, the court found that it was false and known by appellants to be false.　　　　Respondents have detailed documentary evidence, unnecessary to set forth, that the cost of the land and building would be "substantially less" (as found by the court) than $421,000 as represented; specifically, a sum between $404,000 (approximately) and $410,000 (also approximately). Appellants, however, argue that this was only an estimate on Rudnick's part; it was nevertheless his duty to so advise respondents of that fact (*Prince* v. *Harting, supra,* 177 Cal.App.2d 720), and appellants did not question the use of "substantially less" in the particular finding by requesting a more specific finding on the point. There was also testimony, and the court's finding in that regard is not challenged, that all of the respondents justifiably relied on the above misrepresentations and would not have invested their money had they known the true facts. Likewise unchallenged is the finding that Rudnick, an experienced builder and developer for 25 years, had superior knowledge to that possessed by any of the respondents; under such circumstances, respondents were not required to make an independent investigation to check the sources of information. (*Bagdasarian* v. *Gragnon,* 31 Cal.2d 744, 748 [192 P.2d 935].) In summary therefore, all the elements of actionable fraud were proved and determined: misrepresentation (including concealment), knowledge of falsity, intent to defraud, justifiable reliance and resulting

damage. (*Nathanson* v. *Murphy*, 132 Cal.App.2d 363, 367-370 [282 P.2d 174].)

Finally, appellants contend that the findings are insufficient to support a judgment for damages because the fact of damage is not reflected therein. They argue that the measure of damages in a fraud case is the plaintiff's out-of-pocket loss, citing *Gagne* v. *Bertran*, 43 Cal.2d 481, 490-491 [275 P.2d 15]. A similar claim was raised by the defendant in *Simone* v. *McKee*, 142 Cal.App.2d 307 [298 P.2d 667], where the court (per Peters, P. J.) stated: "All of the cases cited in support of this rule are cases between a vendor and vendee. None of them involve fraud by a fiduciary. As to such cases the much broader provisions of sections 3333 and 1709 of the Civil Code are applicable. (*Gagne* v. *Bertran*, 43 Cal.2d 481 [275 P.2d 15]; *Nathanson* v. *Murphy*, 132 Cal.App.2d 363 [282 P.2d 174].)" (Pp. 315-316.) To the same effect is *Walsh* v. *Hooker & Fay*, 212 Cal.App.2d 450, 461 [28 Cal.Rptr. 16]. The proceeding at bar involved a fraudulent breach of a fiduciary duty; the court correctly awarded each respondent the sum he had paid to appellants (the payment of which was found to have been made) plus interest, less the sums received by them from the operation of the building.

For the foregoing reasons, the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 7, 1966.