[No. F022786. Fifth Dist. Feb. 5, 1996.]

AMERICAN ALTERNATIVE ENERGY PARTNERS II, 1985 et al.,
Plaintiffs and Appellants, v.
WINDRIDGE, INC., Defendant and Respondent.

**COUNSEL**

Tedder, Chatzky, Berends & Reedy, Harry E. Hicks and Darlyne N. Miller for Plaintiffs and Appellants.

Sheri Connelly Vining for Defendant and Respondent.

**OPINION**

**THAXTER, J.**—American Alternative Energy Partners II, 1985 (AAEP), Southern California Sunbelt Developers, Inc., and Sunbelt Energy, Inc. (appellants) appeal from the judgment entered after the trial court dismissed their complaint on the motion of defendant Windridge, Inc. (Windridge). In 1991, AAEP, alleging status as a limited partnership, together with the other appellants, filed a complaint against Windridge, stating eight causes of action. It was later ascertained that AAEP failed to file the requisite certificate of limited partnership (Corp. Code, § 15621)[1] until 1994. Windridge moved to dismiss the complaint on the ground AAEP lacked capacity to sue as a limited partnership when it filed its complaint in 1991. Thus, by the time it acquired capacity in 1994, all its causes of action were barred by the

---

[1]Further statutory references are to the Corporations Code unless otherwise indicated.

applicable statutes of limitation. The trial court agreed with Windridge's position and granted the motion.

We will hold that its failure to file the certificate of limited partnership did not deprive AAEP of capacity to sue. Accordingly, we reverse.

## FACTS AND PROCEDURAL HISTORY

The case involves a dispute over the ownership of four wind turbines located in Windridge Wind Park. Appellants claim that in January 1990, Windridge converted appellants' wind turbines to its own use. Appellants had agreed with a third party to move their turbines to another park as of January 1990. Windridge interfered with that relationship by refusing to let appellants move the turbines or have access to the machines for routine maintenance. In May 1991, appellants sued Windridge and others alleging eight causes of action: conversion, interference with contract, interference with prospective contractual advantage, bad faith denial of a contract, negligence, for an accounting, and for declaratory and injunctive relief. The complaint alleged AAEP was a California limited partnership and had complied with all applicable statutes.

Windridge filed a cross-complaint which is not included in the record on appeal. Appellants answered the cross-complaint about December 1991, again including the allegation that AAEP was a California limited partnership.

The parties agreed to bifurcate the issues for trial. In June 1993 at the first phase of the trial, the court found, among other things not pertinent to the appeal, that AAEP owned the turbines at issue.

In January 1994, before the remaining issues were tried, Windridge discovered from third parties that AAEP had failed to file a limited partnership certificate with the Secretary of State as required by section 15621, subdivision (a). Windridge moved to dismiss AAEP's complaint, strike its answer to the cross-complaint, and vacate the June 1993 ruling on the ground AAEP was without capacity to maintain the action pursuant to sections 15621, subdivision (b), and 15712, subdivision (b)(4) (formerly § 15712, subd. (a)(4)).

AAEP filed a certificate of limited partnership on January 28, 1994, before Windridge's motion was heard. The trial court concluded the tardy filing cured the earlier lack of capacity to maintain the action and denied the motion.

On March 21, 1994, the day set for trial, Windridge moved to dismiss appellants' complaint as untimely under the applicable statutes of limitations. The trial court granted the motion, reasoning as follows. According to the allegations of the complaint, the alleged tortious acts occurred in January 1990. However, because AAEP failed to file a certificate of limited partnership, it was without capacity to maintain its action until January 1994. All the alleged causes of action were governed by limitations periods of three years or less. Therefore, the statute of limitations had run on every cause of action by the time AAEP acquired the capacity to maintain its action.[2] Relying by analogy on a case involving corporate suspension for failure to pay taxes (*Welco Construction, Inc.* v. *Modulux, Inc.* (1975) 47 Cal.App.3d 69 [120 Cal.Rptr. 572]), the court held that procedural acts may be validated retroactively by limited partnership revival. However, substantive defenses, such as the statute of limitations, that have accrued during the suspension period are not affected by revival.

The remaining issues raised by Windridge's cross-complaint were set for trial in September 1994. At that time, Windridge moved to strike the evidence submitted by AAEP at the first phase of the trial because AAEP was without standing to maintain its action at the time. The court granted the motion. Windridge moved to dismiss its cross-complaint; the court granted the motion. Judgment was entered on October 5, 1994.[3] The notice of appeal was filed on November 29, 1994.

## DISCUSSION

### 1. *The Appeal Is Timely*

Windridge contends the appeal is untimely because it challenges the court's order of March 22, 1994, dismissing appellants' complaint, not the judgment entered in October 1994. Windridge is mistaken.

In civil matters, appellate jurisdiction is limited to the judgments and orders described in Code of Civil Procedure section 904.1. Only final judgments are appealable under that subdivision. (9 Witkin, Cal. Procedure

---

[2]The record does not disclose the court's reasoning in concluding that AAEP's alleged lack of capacity affected the ability of the other plaintiffs, Southern California Sunbelt Developers, Inc., and Sunbelt Energy, Inc., to maintain the action, thereby justifying dismissal of the entire complaint. The parties have not addressed this question, however, and it is mooted by our conclusion the judgment must be reversed.

[3]The judgment includes a declaration that Windridge owns the wind turbines at issue. Since both the complaint and cross-complaint had been dismissed and all evidence stricken, it is not clear on what basis the court granted Windridge affirmative relief on the merits.

(3d ed. 1985) Appeal, §§ 43-44, pp. 66-68; Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 1995) ¶¶ 2.21-2.23, pp. 2-12 to 2-13.) When a cross-complaint remains pending between the parties, even though the complaint has been fully adjudicated, there is no final judgment. (9 Witkin, *op. cit. supra*, § 56, p. 78; *Morehart* v. *County of Santa Barbara* (1994) 7 Cal.4th 725, 743 [872 P.2d 143]; *G.E. Hetrick & Associates, Inc.* v. *Summit Construction & Maintenance Co.* (1992) 11 Cal.App.4th 318, 325 [13 Cal.Rptr.2d 803].) The order dismissing appellants' complaint was not an appealable judgment. Thus, the notice of appeal challenging the earlier order and filed within 60 days of entry of final judgment was timely. (Cal. Rules of Court, rule 2(a).)

2. *Appellants Did Not Waive Their Right to Appeal by Accepting a Benefit of the Judgment*

■ Windridge contends appellants waived their right to appeal by accepting a benefit of the judgment. Windridge states in its brief that after the trial court ruled that Windridge, not AAEP, owned the disputed wind turbines, AAEP notified the Kern County Tax Collector's Office of the change of ownership. Thereafter, Windridge was billed for and paid the taxes assessed on the turbines in 1994 and 1995.

Windridge relies on the rule that the voluntary acceptance of the benefit of a judgment or order bars prosecution of an appeal. The rationale for the rule is that ". . . the right to accept the fruits of the judgment and the right to appeal therefrom are wholly inconsistent, and an election to take one is a renunciation of the other." (*Mathys* v. *Turner* (1956) 46 Cal.2d 364, 365 [294 P.2d 947].)

We reject Windridge's contention.

First, we doubt that Windridge followed proper procedure in raising the waiver issue. Windridge could have made a formal, written motion for dismissal of the appeal, which, because it would have been based on matters not appearing in the appellate record, would have required the submission of affidavits or other supporting evidence. (Cal. Rules of Court, rule 41(a).) Witkin suggests that such a motion is required when, as here, the respondent seeks dismissal after the appellate record is filed. (See 9 Witkin, Cal. Procedure, *op. cit. supra*, Appeal, § 509, p. 494.) Instead of so moving, though, Windridge merely raised the waiver issue in its respondent's brief based on an unsworn statement of facts allegedly occurring after rendition of judgment. Windridge has not cited any authority for our finding waiver when the question is presented in such a casual manner.

Even if the issue were properly presented, however, we would not find waiver.

Windridge cites three cases as authority for its contention. None of the three involve facts similar to this case. In *Mathys* v. *Turner, supra*, 46 Cal.2d 364, the plaintiff sought recovery of over $10,000 as attorney fees and costs and was awarded a judgment for $1,500. After accepting payment of the award and executing and delivering a satisfaction of judgment, the plaintiff appealed. The Supreme Court found waiver and dismissed the appeal, rejecting the plaintiff's argument that by failing to appeal the defendant agreed that the plaintiff was entitled to $1,500 in any event. (*Id.* at pp. 365-366.)

In *Trollope* v. *Jeffries* (1976) 55 Cal.App.3d 816 [128 Cal.Rptr. 115], an arbitrator made an "Interim Order" which, among other things, determined that Jeffries was entitled to $128,000 from an escrow account upon closing. The escrow subsequently closed and Jeffries received and accepted payment of the $128,000. The arbitrator's interim order was later modified in a "Final Order and Award" which reduced the award to Jeffries to $122,000. The final order and award was thereafter confirmed by a judicial order and judgment. Jeffries appealed on grounds seeking to attack the arbitrator's interim order. The appellate court found that "by accepting and retaining the fruits of a part of the award which is in his favor, Jeffries is estopped from prosecuting an appeal from those parts of the award which are against him" and dismissed the appeal. (*Id.* at p. 826.)

In *Schubert* v. *Reich* (1950) 36 Cal.2d 298 [223 P.2d 242], the plaintiff successfully moved for new trial after the defendant obtained judgment. The order granting new trial was conditioned on the plaintiff's paying some attorney fees to the defendant. Because the defendant accepted payment of those fees, the Supreme Court found he waived his right to appeal from the order granting new trial and the appeal was dismissed.

The waiver rule has been applied in many other reported cases. (See cases collected in 9 Witkin, Cal. Procedure, *op. cit. supra*, Appeal, §§ 161-162, pp. 171-174.) As far as our research shows, however, in all those cases the benefit, acceptance of which constituted waiver, was expressly provided for in the judgment or order.

In this case the judgment did not expressly confer any benefits on appellants. Instead, it denied all relief to appellants and declared that Windridge is the owner of the wind turbines. Windridge did not pay or transfer anything of value to appellants pursuant to the judgment. The judgment did

not deal with any property tax issue, and appellants' nonpayment of property taxes following the judgment, if such be the fact, was merely an incidental consequence. We see no basis for extending the waiver rule relied on by Windridge to bar this appeal.

### 3. A Defectively Formed Limited Partnership Does Not Lack the Legal Capacity to Sue

By stating the issue in terms of "standing," appellants confuse lack of capacity to sue with lack of right to sue. ■ The question of standing to sue is different from that of capacity. Incapacity is merely a legal disability, such as minority or incompetency, which deprives a party of the right to represent his or her own interests in court. On the other hand, standing to sue—the real party in interest requirement—goes to the existence of a cause of action, i.e., whether the plaintiff has a right to relief. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 1995) ¶ 2:3.1, p. 2-2; 5 Witkin, Cal. Procedure, *op. cit. supra*, Pleading, § 920, p. 357.) In this case, Windridge challenges AAEP's capacity to maintain and defend the action, not its right to relief.

The rules regarding party capacity are designed to assure that whatever judgment is rendered will be binding on the parties involved, and thus effectively resolve the litigation. Lack of capacity is not a jurisdictional defect and must be properly raised or the objection may be waived. (Weil & Brown, *op. cit. supra*, ¶ 2:81, p. 2-18.) If the court sustains an objection to a party's capacity to sue, it may grant leave to substitute a party or entity having the requisite capacity. (*Lazar* v. *Estate of Lazar* (1962) 208 Cal.App.2d 554, 561 [25 Cal.Rptr. 354].)

In general, any person or entity has capacity to sue or defend a civil action in the California courts. This includes artificial "persons" such as corporations, partnerships and associations. (Weil & Brown, *op. cit. supra*, ¶ 2:82, p. 2-18.) A partnership or other unincorporated association has capacity both to sue and be sued in the name it has assumed or by which it is known. (Code Civ. Proc., § 369.5, subd. (a); *Tenants Assn. of Park Santa Anita* v. *Southers* (1990) 222 Cal.App.3d 1293, 1300 [272 Cal.Rptr. 361].)

#### CALIFORNIA LIMITED PARTNERSHIPS

A limited partnership is a statutory creation which gives investors protection by limiting their liability for partnership obligations. (9 Witkin, Summary of Cal. Law (9th ed. 1990) Partnership, § 61, pp. 450-451.) In 1949, California adopted the Uniform Limited Partnership Act (§§ 15501-15533,

ULPA). In July 1984, it enacted the California Revised Limited Partnership Act (§§ 15611-15723, Revised Act). The Revised Act's transition provisions provide that partnerships formed under the ULPA will continue to be governed by that Act unless the partnership elects to be governed by the Revised Act. (§§ 15710-15714.) However, all California limited partnerships, whenever formed, are required to file a certificate of limited partnership with the Secretary of State. (§§ 15621, subd. (a), 15712, subd. (b)(2); Advising Cal. Partnerships (Cont.Ed.Bar 2d ed. 1988) Limited Partnership Agreement, §§ 5.1-5.3, pp. 240-242; 9 Witkin, Summary of Cal. Law, *op. cit. supra*, Partnership, § 66, pp. 457-458.)

Limited partnerships formed after July 1, 1984, are not formed until the certificate of limited partnership has been filed. Filing is essential to existence. (§ 15621, subd. (b).) Partnerships formed before that date cannot "maintain" any action, suit or proceeding in California courts until such a certificate is filed. (§ 15712, subd. (b)(4); Advising Cal. Partnerships, *op. cit. supra*, Litigation, § 6.20, p. 379, § 6.37, p. 387.)

AAEP did not file a certificate of limited partnership with the Secretary of State until January 1994. Thus, AAEP, a limited partnership, did not exist until then. The issue presented then is not whether AAEP was precluded from maintaining this action under section 15712, subdivision (b)(4), but whether AAEP had capacity to sue, as an entity other than a limited partnership, when appellants filed their complaint in 1991. If AAEP had capacity to sue, its complaint was effective to prevent the running of the statute of limitations on its causes of action.

### AAEP's LEGAL CAPACITY TO SUE

■ Appellants contend AAEP's failure to file a certificate of limited partnership rendered it a general partnership with capacity to sue at the time it filed its complaint. Appellants rely on sections 15044, 15722 and 15621. Section 15044 provides: "Every partnership that is not formed in accordance with the law concerning . . . limited . . . partnerships, and every . . . limited partnership, so far only as those partners who are not special partners are concerned, is a general partnership. Every partner who is not a special or limited partner . . . is a general partner."

Section 15722 provides: "In any case not provided for in this chapter, the provisions of the Uniform Partnership Act . . . govern."

Section 15621 provides: "(a) In order to form a limited partnership the general partners shall execute, acknowledge, and file a certificate of limited

partnership and, either before or after the filing of a certificate, the partners shall have entered into a partnership agreement. The certificate shall be filed in the office of, and on a form prescribed by, the Secretary of State . . . ."

Appellants submit that, read together, these provisions imply that "defectively formed" limited partnerships are treated as general partnerships. There is ample authority for the proposition that purported limited partners of an improperly formed limited partnership have liability as general partners. (*Tiburon Nat. Bank* v. *Wagner* (1968) 265 Cal.App.2d 868, 875-876 [71 Cal.Rptr. 832] [certificate of limited partnership never filed; sanction for noncompliance is liability as a general partner]; *Solomont* v. *Polk Development Co.* (1966) 245 Cal.App.2d 488, 495 [54 Cal.Rptr. 22]; *Gamma Farms* v. *U. S.* (N.D.Cal. 1990) 90-2 U.S. Tax Cas. (CCH) ¶ 50,378, pp. 85,165-85,166 ["In the absence of compliance with the recordation requirements, a limited partnership is not formed. Instead, a general partnership will result and the alleged limited partner will be held liable as a general partner. Cal. Corp. Code § 15044."]; and see 9 Witkin, Summary of Cal. Law, *op. cit. supra*, Partnership, § 62, p. 453.)

In addition, Advising California Partnerships states: "When the [limited partnership] agreement is signed before the certificate is recorded or filed, . . . some form of a partnership may exist unless the agreement specifically provides that the term does not begin until the certificate is filed. A general partnership may exist in this interim period. . . ." (Advising Cal. Partnerships, *op. cit. supra*, § 5.42, p. 261.)

We know of no case addressing the capacity of a purported limited partnership to file a lawsuit. That such capacity exists, however, seems to follow logically from section 15044's provision that if a limited partnership is not formed because of noncompliance with the recordation requirement, the partnership is a general partnership. If, in addition to penalizing such noncompliance with the serious sanction of general liability, the Legislature had meant to deprive the partnership of its capacity to sue, we assume the Legislature would have said so. It did not. Under Code of Civil Procedure section 369.5 partnerships are granted authority to sue in the partnership name. Thus, AAEP, although legally a general partnership until it complied with the certification requirement, did not lack capacity to sue.

■ The conclusion is the same if AAEP's capacity is analyzed under the fictitious business name statutes. Business and Professions Code section 17910 provides that every partnership or association transacting business in the state for profit under a fictitious business name (one which does not

disclose the surname of every member) shall file a fictitious business name statement. The code imposes a single penalty for failure to comply with the filing requirements: "No person transacting business under the fictitious business name contrary to the provisions of this chapter . . . may maintain any action upon or on account of any contract made, or transaction had, in the fictitious business name in any court of this state until the fictitious business name statement has been executed, filed, and published as required by this chapter. . . ." (Bus. & Prof. Code, § 17918.)

The penalty does not apply to tort actions brought by the fictitious name business entity. (*Hydrotech Systems, Ltd.* v. *Oasis Waterpark* (1991) 52 Cal.3d 988, 1001, fn. 8 [277 Cal.Rptr. 517, 803 P.2d 370].) Further, the statute only prohibits maintenance of the suit; it does not bar commencement of the action. (*Kadota Fig Assn.* v. *Case-Swayne Co.* (1946) 73 Cal.App.2d 796, 805 [167 P.2d 518].) Therefore, because AAEP's causes of action sound in tort, it was not precluded from filing and pursuing its action as an entity operating under a fictitious business name. Accordingly, it had capacity to sue when it filed its complaint and the statute of limitations did not run on its causes of action.

Windridge contends section 15712, subdivision (b)(4), which precludes pre-1984 limited partnerships from maintaining a court action until they file a certificate with the Secretary of State, applies to AAEP because there is no evidence AAEP was formed in 1985 as it claims. The argument is without merit. The only evidence before this court is that AAEP, the limited partnership, was formed in 1994 when the certificate of limited partnership was filed. In any event, section 15712, subdivision (b)(4) merely prevents the maintenance of a suit until the necessary certificate is filed; it does not preclude commencement of the action. (Compare *Kadota Fig Assn.* v. *Case-Swayne Co.*, *supra*, 73 Cal.App.2d at p. 805 [failure to comply with fictitious business name filing requirements does not prohibit commencement, only maintenance of suit] with *Hydrotech Systems, Ltd.* v. *Oasis Waterpark*, *supra*, 52 Cal.3d at p. 994 [no person may "bring or maintain any action" to recover compensation for unlicensed contract work (Bus. & Prof. Code, § 7031)].)

Windridge next urges the court to find AAEP's situation analogous to a corporation whose powers have been suspended for nonpayment of the corporate franchise tax. Suspended corporations lack legal capacity to prosecute or defend a civil action in California's courts. (Rev. & Tax. Code, § 23301; *Reed* v. *Norman* (1957) 48 Cal.2d 338, 343 [309 P.2d 809].) The legislative policy behind the tax code provisions is to enhance tax collections rather than to assure enforceability of judgments, as with other rules on party

capacity. (Weil & Brown, Practice Guide: Civil Procedure Before Trial, *supra*, ¶ 2:91, p. 2-21; *Peacock Hill Assn.* v. *Peacock Lagoon Constr. Co.* (1972) 8 Cal.3d 369, 371 [105 Cal.Rptr. 29, 503 P.2d 285].)

Once the delinquent taxes are paid, the corporation's powers are restored, thus "reviving" its capacity to sue and defend. Revival of corporate powers validates procedural steps taken on behalf of the corporation while it was under suspension. But, revival is "without prejudice to any . . . defense . . . which has accrued by reason of the original suspension . . . ." (Rev. & Tax. Code, §§ 23305, 23305a; *ABA Recovery Services, Inc.* v. *Konold* (1988) 198 Cal.App.3d 720, 724 [244 Cal.Rptr. 27]; *Electronic Equipment Express, Inc.* v. *Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834, 843 [176 Cal.Rptr. 239].) Thus, a suit filed by the corporation while its powers were suspended does not toll the statute of limitations. The suit is ineffective because of the suspension, so the statute continues to run. (*Sade Shoe Co.* v. *Oschin & Snyder* (1990) 217 Cal.App.3d 1509, 1513 [266 Cal.Rptr. 619]; *Welco Construction, Inc.* v. *Modulux, Inc., supra*, 47 Cal.App.3d at p. 74.)

AAEP's capacity, as a business entity other than a limited partnership, is distinguishable from that of a suspended corporation. First, whether AAEP was a general partnership or some other unincorporated association when it filed its complaint under Code of Civil Procedure section 369.5, subdivision (a), it had capacity to sue in the name it had assumed or by which it was known.

█ Second, the policy underlying the corporate suspension provisions differs from that behind the limited partnership certificate filing provisions. As set out above, the Revenue and Taxation Code suspension statutes prohibit the delinquent corporation from enjoying the ordinary privileges of a going concern in order that some pressure will be brought to bear to force the payment of taxes. (*Peacock Hill Assn.* v. *Peacock Lagoon Constr. Co., supra*, 8 Cal.3d at p. 371.) On the other hand, the policy underlying the certificate of limited partnership filing requirements (§ 15621) is to give notice to the public of the limited liability assumed by the limited partners and of the pertinent terms of the partnership agreement. (*Tsakos Shipping & Trading, S.A.* v. *Juniper Garden Town Homes, Ltd.* (1993) 12 Cal.App.4th 74, 91 [15 Cal.Rptr.2d 585]; *Brown* v. *Panish* (1979) 99 Cal.App.3d 429, 431 [160 Cal.Rptr. 282].) The appropriate sanction for failure to file a certificate of limited partnership is to impose the liability of a general partner on the

purported limited partners if such liability is appropriate under the circumstances. (§ 15633.)[4]

No legitimate purpose is served by precluding a purported limited partnership from commencing a legal action against one who has committed a tort against it. Accordingly, section 15621's purpose is not served by imposing the sanctions provided for in the Revenue and Taxation Code on partnerships who fail to file a limited partnership certificate.

In any event, even if the situation of a defectively formed limited partnership was analogous to a corporation whose powers were suspended, the statute of limitations would not have run on appellants' claims under the facts of this case. The filing of a cross-complaint, to a complaint by a suspended corporation, tolls the statute of limitations so that the corporation may proceed with its original action upon revival. (*Electronic Equipment Express, Inc.* v. *Donald H. Seiler & Co.*, *supra*, 122 Cal.App.3d at pp. 844-845.)

In *Electronic Equipment Express, Inc.* v. *Donald H. Seiler & Co.*, *supra*, 122 Cal.App.3d 834, the plaintiff corporation filed an accounting malpractice action four months after suspension of its power for nonpayment of its franchise tax. The trial court properly found that the running of the applicable statute of limitations on plaintiff's claims, though concededly not tolled by the filing of the complaint, was tolled by the filing of a cross-complaint within the limitation period by defendant accountants. The cross-complaint was voluntary in that it was filed while plaintiff's corporate powers were suspended and defendants could have ignored plaintiff's complaint by waiting until the statute had run before answering and cross-complaining. Though Revenue and Taxation Code section 23305a normally prevents the revival of a suspended corporation from prejudicing any substantive right

---

[4]Section 15633 states: "(a) Except as provided in subdivision (b), if a certificate of limited partnership has not been filed, a person who makes a contribution to the purported limited partnership and in good faith believes that that person has become a limited partner is not liable for the obligations of the purported limited partnership, if, on ascertaining that the certificate has not been filed and after a failure of the general partner or partners to file the certificate within a reasonable time after request, that person promptly files the certificate of limited partnership. A limited partner executing and filing a certificate of limited partnership shall send a copy of the certificate so filed to each general partner at the general partner's last known address.

"(b) A person who makes a contribution to the purported limited partnership and in good faith believes that that person has become a limited partner is liable only to any third party who transacted business with the purported limited partnership before the certificate is filed and who reasonably believed that the person was a general partner at the time of the transaction."

which accrued during the period of suspension, such a right can be waived, and defendants thus waived the limitation defense by filing the cross-complaint. (122 Cal.App.3d at p. 847.)

Here, Windridge filed a cross-complaint against appellants and others sometime before December 3, 1991.[5] Thus, under the reasoning of *Electronics Equipment Express*, the statute of limitations would have been tolled well within the three-year period.

### DISPOSITION

Judgment reversed. Costs to appellants.

Stone (W. A.), Acting P. J., and Buckley, J., concurred.

---

[5]Although the cross-complaint is not part of the appellate record, the record does include appellants' answer, dated December 3, 1991.