Filed 3/25/15  Marriage of Shannahan CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of SARACIA and WILLIAM P. SHANNAHAN. | D064822 |
| SARACIA SHANNAHAN, | |
| Respondent, | (Super. Ct. No. D483710) |
| v. | |
| WILLIAM P. SHANNAHAN, | |
| Appellant; | |
| KOLMAR, LLC, | |
| Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Robert C. Longstreth, Judge.  Affirmed.

RSR Law Group and James Reynolds for Appellant William P. Shannahan.

Smylie & Van Dusen and Scott A. Smylie for Appellant Kolmar, LLC.

Stephen Temko; Janis Law Group and Dean T. Janis for Respondent Saracia Shannahan.

William Shannahan (Husband) and Kolmar, LLC (Kolmar) (together Appellants) appeal an order granting the motion of Saracia Shannahan (Wife) to enforce a marital dissolution judgment against Husband and ordering the release to her of a portion of the proceeds of the sale of certain real property being held in the trust account of Kolmar's attorneys. On appeal, Appellants contend the trial court erred by: (1) ordering the release of the property sale proceeds to Wife; (2) wrongly depriving Kolmar of a jury trial in Wife's separate fraudulent conveyance action; and (3) finding Husband apparently committed a fraud on the court. Based on our reasoning below, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

In 1970, Husband and Ivan Ankenbrandt acquired real property located at 202-204 Kolmar Street in La Jolla (Property). Each held title to an undivided 50 percent interest as tenants in common.

In 1981, Husband conveyed his undivided 50 percent interest in the Property to himself, as trustee of the 1981 Shannahan Separate Property Trust (Trust). In 1983, Husband and Wife married. In 2004, they separated and Wife filed for dissolution of their marriage.

In 2006, Ankenbrandt filed a partition action against Husband, apparently seeking to force the sale of the Property and distribution of the sale proceeds. On July 1, 2006, Husband, as trustee of the Trust, signed an operating agreement for the formation of Kolmar as a limited liability company (LLC) in Nevada, but did not file articles of organization for Kolmar with the Nevada Secretary of State until September 30, 2008.

2

On September 24, 2007, Husband, as trustee of the Trust, signed a grant deed (Deed) purporting to convey the Trust's interest in the Property to Kolmar. Also on September 24, Husband, as trustee of the Trust, signed a document assigning a 50 percent interest in Kolmar to Virginia Way, LP (VWLP). That assignment stated the agreed value of the 50 percent interest in Kolmar was $300,000. On that date, Husband, as trustee on behalf of the Trust and also as the general partner of VWLP, signed a restatement of Kolmar's operating agreement.

On April 7, 2008, Husband's signature on the Deed was acknowledged by a notary public. On April 8, Husband recorded the Deed with the San Diego County Recorder's Office.

On August 29, 2008, a judgment of dissolution on reserved issues (Judgment) was entered, awarding Wife about $3,000,000 against Husband.[1] The Judgment confirmed that the 50 percent interest in the Property was Husband's separate property. The court reserved jurisdiction to enforce the Judgment.

On September 30, 2008, Husband filed articles of organization for Kolmar with the Nevada Secretary of State. On October 10, the trial court issued written findings and order after hearing (FOAH) based on an August 14 hearing before a privately compensated temporary judge (Hon. Thomas Ashworth (Ret.)) and that judge's written

---

[1]     The judgment was based on the July 29, 2008, findings and orders of a privately compensated temporary judge. Those findings included a finding that Husband was the alter ego of VWLP and all other entities. On appeal, we affirmed that judgment for the most part, reversing only the court's denial of Wife's requests for attorney fees and sanctions. (*Shannahan v. Shannahan* (Dec. 1, 2010, D053701) [nonpub. opn.] (*Shannahan I*).)

3

findings and order after hearing, signed on October 1. In the FOAH, the court granted Wife's request for a judicial lien "against all assets in [Husband's] name," which lien was to be in effect until the final division of the assets under the judgment of dissolution took place. The FOAH also stated Wife's attorney was to prepare the written order and submit it to the court and Husband's attorney for approval.

In December 2008, Kolmar signed escrow instructions to transfer its interest in the Property through an Internal Revenue Code section 1031 exchange. In January 2009, the Property was sold to a third party purchaser and the sale proceeds were held in escrow.

On June 10, 2009, counsel for Kolmar and Wife signed a stipulation for partial distribution of proceeds from the sale of the Property, providing that the balance of the sale proceeds after distributions made to Ankenbrandt and the referee would be transferred to the attorney-client trust account of Kolmar's counsel and no distributions from that trust account would be made without agreement of the parties or a court order. In August 2009, Wife filed a fraudulent conveyance action against Husband and Kolmar, arguing Husband's transfer of the Trust's interest in the Property to Kolmar was fraudulent and intended to avoid Husband's liability under the Judgment.

In June 2012, Wife filed a motion to enforce the Judgment, seeking the release to her of the Property sale proceeds held in the attorney-client trust fund of Kolmar's counsel per the parties' stipulation. Wife argued that because Kolmar did not exist as an LLC when Husband, on September 24, 2007, signed the Deed that purportedly transferred the Trust's interest to Kolmar, the Deed was null and void and therefore those sale proceeds should be considered to be the property of the Trust and, as a result, subject

4

to enforcement of the Judgment. Kolmar opposed the motion, arguing that although its articles of organization were not filed until September 30, 2008, it nevertheless existed as a general partnership at the time Husband signed the Deed and therefore the Deed effectively transferred the Trust's interest in the Property to it. Kolmar argued that because on September 24, 2007, Husband assigned a 50 percent interest in Kolmar to VWLP, Kolmar existed as a general partnership on that date. Kolmar also asserted that on June 9, 2009 (one day before its counsel signed the stipulation to hold the sale proceeds in his attorney-client trust account), a grant deed signed by Husband was recorded pursuant to which Virginia Way, LLC (VWLP's successor entity) conveyed to Kolmar a partial interest in certain Virginia Way real property purportedly in exchange for an assignment of Kolmar's interest in the Property sale proceeds.

The trial court (San Diego County Superior Court Judge Lorna Alksne) heard arguments of counsel on Wife's motion to enforce the Judgment and issued a minute order granting Wife's motion, finding Wife obtained a judicial lien in August 2008 that applied to the Trust's interest in the Property sale proceeds, and Husband's attempt to transfer those proceeds to Kolmar was not valid because it had not been incorporated (i.e., legally organized in the State of Nevada) prior to issuance of that judicial lien. After Judge Alksne subsequently recused herself, San Diego County Superior Court Judge Robert C. Longstreth issued an order on September 17, 2013, incorporating Judge Alksne's findings and orders. The court found Wife's judicial lien obtained in August 2008 was valid, the funds held in the trust account were subject to that lien, and Husband's attempt to transfer the Property to Kolmar was not valid because Kolmar was

5

not incorporated (i.e., by filing of articles of organization) before Wife obtained the judicial lien. Accordingly, the court ordered that the funds held in the trust account of Kolmar's counsel in the amount of $1,232,210 be released to Wife to enforce the Judgment. Kolmar timely filed a notice of appeal and Husband timely filed a notice of cross-appeal.[2]

DISCUSSION

I

*Presumption of Correctness*

A trial court's judgment or order is presumed to be correct. In *Denham v. Superior Court* (1970) 2 Cal.3d 557, the court stated:

> "[I]t is settled that: 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown [by the appellant]. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Id*. at p. 564.)

The burden is on the appellant to overcome the presumption of correctness and show reversible error. (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610; *Fundamental Investment etc. Realty Fund v. Gradow* (1994) 28 Cal.App.4th 966, 971.) We generally will imply all findings necessary to support a judgment or order when there is no statement of decision. (*In re Marriage of Cohn* (1998) 65 Cal.App.4th 923, 928.) Furthermore, " '[n]o rule of decision is better or more firmly established by

---

[2]    Because Husband's opening cross-appellant's brief simply joins in and incorporates Kolmar's opening appellant's brief, we consider their appellate arguments to be the same.

6

authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' " (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19; see also *In re Marriage of Mathews* (2005) 133 Cal.App.4th 624, 632; *Estate of Beard* (1999) 71 Cal.App.4th 753, 776.)

## II

### *Enforcement Order*

Appellants contend the trial court erred by ordering the release to Wife of the Property sale proceeds held in the attorney-client trust account of Kolmar's counsel to enforce, in part, the Judgment. Appellants assert the court erred by finding Husband's transfer to Kolmar of the Trust's interest in the Property was not valid because Kolmar had not been incorporated before Wife obtained her judicial lien in August 2008. They argue that the Deed signed by Husband, as trustee of the Trust, on September 24, 2007, validly conveyed to Kolmar the Trust's interest in the Property despite Kolmar's lack of articles of organization because it was a general partnership at the time of that conveyance.

We are not persuaded by Appellants' argument and affirm the trial court's enforcement order, albeit on somewhat different reasoning than relied on by the court. (*D'Amico v. Board of Medical Examiners*, *supra*, 11 Cal.3d at p. 19.) At the time of Husband's purported conveyance on September 24, 2007, Kolmar did not exist as a

7

limited liability company (LLC), general partnership, or other entity and therefore could not accept delivery of the Deed. Absent a valid delivery of the Deed, Husband, as trustee of the Trust, continued to hold title to the 50 percent interest in the Property, which interest, and its portion of the subsequent sale proceeds, were subject to Wife's enforcement of the Judgment.

Appellants concede that Kolmar did not exist as a valid limited liability company (LLC) under the laws of the State of Nevada until it filed articles of organization on September 30, 2008. Accordingly, Kolmar was not a valid LLC on September 24, 2007, when Husband signed the Deed purporting to convey the Trust's interest in the Property to it. Furthermore, contrary to Appellants' argument, we conclude Kolmar also was not a valid general partnership at the time Husband signed the Deed and purportedly delivered it to Kolmar on September 24, 2007.

On July 1, 2006, Husband, as trustee of the Trust, signed an operating agreement for the formation of Kolmar as an LLC in Nevada, but did not file articles of organization for Kolmar with the Nevada Secretary of State at that time. On September 24, 2007, Husband, as trustee of the Trust, signed the Deed purporting to convey the Trust's interest in the Property to Kolmar. Also on September 24, Husband, as trustee of the Trust, signed a document purporting to assign a 50 percent interest in Kolmar to VWLP. Importantly, however, that assignment stated the agreed value of the 50 percent interest in Kolmar was $300,000. On that date, Husband, as trustee and on behalf of the Trust and also as the general partner of VWLP, signed a restatement of Kolmar's operating agreement.

8

As Appellants assert, a general partnership under both California and Nevada law is an association of two or more persons to carry on as co-owners of a business for profit. Although we assume arguendo that at some time on September 24, 2007, a general partnership was formed between Kolmar and VWLP based on Husband's signing a document assigning to VWLP a 50 percent interest in Kolmar, that general partnership could not have existed at the time Husband signed and purported to deliver the Deed to Kolmar on that date. As Wife notes, the document by which Husband, as trustee of the Trust, purported to assign a 50 percent interest in Kolmar to VWLP stated the agreed value of that 50 percent interest in Kolmar was $300,000. However, there is nothing in the record showing Kolmar owned or held title to any property or other assets prior to September 24, 2007. Therefore, the only reasonable inference is that Kolmar attained its total value of $600,000 by virtue of Husband's signing and purportedly delivering the Deed to Kolmar that ostensibly conveyed to it the Trust's 50 percent interest in the Property. Accordingly, the purported assignment to VWLP of a 50 percent interest in Kolmar on September 24, 2007, could have occurred only *after* Husband had already signed and purported to deliver the Deed to Kolmar. Otherwise, the value of a 50 percent interest in Kolmar could not have been $300,000 as stated in the purported assignment.

Contrary to Appellants' argument, Husband's signing and purported delivery of the Deed on September 24, 2007, did *not* occur simultaneously with Husband's signing the document assigning to VWLP the 50 percent interest in Kolmar on that same date. Because a general partnership between Husband, as trustee of the Trust, and VWLP could not have been formed until after Husband signed the document assigning to VWLP

9

the 50 percent interest in Kolmar, that purported general partnership could *not* have existed at the time when Husband, *earlier* on September 24, 2007, signed and purported to deliver to Kolmar the Trust's interest in the Property. Therefore, Husband's signing and delivery of the Deed was, in effect, an attempted delivery to himself as trustee of the Trust of that interest in the Property and therefore did not result in any change in the holder of the title to that property interest.

Furthermore, as Wife asserts, cases have held that an attempted conveyance of real property to a nonexistent entity is void. (See, e.g., *Stone v. Jetmar Properties, LLC* (Minn.App. 2007) 733 N.W.2d 480, 486 [deeds cannot be delivered to nonexistent entities such as "incipient" LLC's before their articles are filed] (*Stone*); *Matter of Hausman* (N.Y. 2008) 51 A.D.3d 922, 923-924 ["As a general rule, a purported entity which is not yet in legal existence cannot take title to real property [citations]. . . . In the absence of a colorable attempt to comply with the statute governing the organization of [LLC's] by filing, we cannot find that the LLC was a de facto entity capable of taking title on the date the deed was executed [citations]."]; *Julian v. Petersen* (Utah App. 1998) 966 P.2d 878, 881 ["It is well-settled that an attempted conveyance of land to a nonexisting entity is void."].) In *Stone*, the Minnesota appellate court stated:

> "Under Minnesota law deeds cannot be delivered to nonexistent entities, whether the entities are natural or legal. . . . [T]he supreme court has held that because an organization was not a corporation de jure or de facto, it could not take title to real estate. [Citation.] We can find no basis in Minnesota law for delaying transfer of title to some indeterminate future date when the grantee might come into existence. In fact, 'many, but not all, courts have denied validity to deeds conveying property to corporations which are not incorporated at the time of conveyance.' [Citations.] According to these courts,

10

'[t]he effective date of a deed is usually stated to be the date of delivery, and if at that time the corporation is "non-existent," the ordinary rule governs and the deed is treated as a nullity.' "[3] (*Stone*, *supra*, 733 N.W.2d at p. 486.)

*Stone* rejected the application of cases from other jurisdictions that delayed the question of delivery of a deed until the later time of incorporation because Stone did not have the requisite intent to convey the property at that later date. (*Id*. at p. 487.) Accordingly, *Stone* concluded:

> "We see no reason to deviate from the 'ordinary rule' that a deed to an entity nonexistent at the time of conveyance is void. Limiting the question of delivery to the time of conveyance is not only consistent with Minnesota law, it is also a logical result given the ease of formal incorporation and organization. Allowing a form of future interest to vest in unorganized entities would be inconsistent with our public policy of encouraging legal organization." (*Stone*, *supra*, 733 N.W.2d at p. 487.)

We agree with *Stone*'s reasoning and apply that reasoning to the facts in this case. At the time of Husband's signing and purported delivery of the Deed on September 24, 2007, Kolmar did not exist as an LLC or other legal entity because it had not yet filed any articles of organization with the Nevada Secretary of State and had not yet become a general partnership between Husband, as trustee of the Trust, and VWLP. Because Kolmar did not exist as a legal entity at that time, it could not accept delivery of the Deed. (Civ. Code, §§ 1054 ["A grant takes effect, so as to vest the interest intended to be transferred, only upon its delivery by the grantor."], 1056 ["A grant cannot be delivered to the grantee conditionally."]; *Stone*, *supra*, 733 N.W.2d at p. 486.) Therefore, the Deed

---

3      In Minnesota, de facto corporations and de facto LLC's are not recognized under current law. (*Stone, supra*, 733 N.W.2d at p. 485.)

11

is null and void and did not legally convey the Trust's interest in the Property to Kolmar.[4] Instead, Husband, as trustee of the Trust, continued to hold that interest in the Property and, after the Property's sale pursuant to the Internal Revenue Code section 1031 exchange, he acquired ownership of a portion of the proceeds from the sale. Because the Trust's property was Husband's separate property and thus was subject to the Judgment, Wife could, and properly did, file a motion to enforce the Judgment against those sale proceeds being held in the attorney-client trust account of Kolmar's counsel and the trial court properly granted that motion.

*American Alternative Energy Partners II v. Windridge, Inc.* (1996) 42 Cal.App.4th 551, cited by Appellants, is factually inapposite to the facts in this case and does not persuade us to reach a contrary conclusion. In *Windridge*, the court concluded the plaintiff's failure to file a certificate of limited partnership before filing its action against the defendant did not deprive it of the legal capacity to sue because it nevertheless existed as a general partnership at the time it filed that action. (*Id*. at pp. 559-565.) In contrast, in this case, as discussed above, there was no general partnership at the time Husband signed and purported to deliver the Deed to Kolmar.

---

[4] Because the facts in this case are inapposite to those in *Luna v. Brownell* (2010) 185 Cal.App.4th 668, we need not address its holding that a deed executed in anticipation of the creation of a trust, which is in fact created thereafter, may be valid between the grantor and grantee on the date the trust was formed. (*Id*. at p. 675.)

## III

### *Remaining Contentions*

Because we dispose of this appeal on the above grounds, we need not, and do not, address Appellants' remaining contentions. In any event, because the trial court's order apparently will make Wife's fraudulent conveyance action moot, we need not address Appellants' argument that the order had the effect of wrongly depriving Kolmar of a jury trial in that fraudulent conveyance action. Furthermore, although Appellants complain the trial court found, either implicitly or expressly, that Husband committed a fraud on the court by allowing Kolmar's counsel to enter into a stipulation to hold the Property sale proceeds in his attorney-client trust account when he (Husband) knew he had purported to assign Kolmar's interest in those proceeds to Virginia Way, LLC, just one day before its counsel signed that stipulation, we do not rely on that finding by the trial court in disposing of this appeal and elect to not address that finding in this opinion.

### DISPOSITION

The order is affirmed. Wife is entitled to her costs on appeal.


McDONALD, J.

WE CONCUR:


BENKE, Acting P. J.


NARES, J.

13